42 N.J. Super. 75 (1956)
125 A.2d 890
ALICE SWAIN ZELL, ET AL., PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF ROSELAND, THE HALF DIME SAVINGS BANK, THE ROSELAND METHODIST PROTESTANT CHURCH, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 5, 1956.
Decided October 15, 1956.
*77 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Roy J. Grimley argued the cause for plaintiffs-appellants.
Mr. Fred G. Stickel, III argued the cause for defendants-respondents (Messrs. Stickel & Stickel, attorneys for Borough of Roseland, et al.; Messrs. Brandley & Brandley and Mr. Walter G. Brandley, attorneys for The Roseland Methodist Protestant Church, et al.; Messrs. Riker, Emery & Danzig, Mr. Irving Riker and Mr. Dickinson R. Debevoise, attorneys for The Half Dime Savings Bank).
The opinion of the court was delivered by CONFORD, J.A.D.
This action was brought by residents and property owners of Roseland in the Law Division to review an ordinance adopted July 12, 1955 amending the zoning ordinance of the Borough of Roseland originally adopted May 13, 1952. The basis of our determination of this appeal leaves it unnecessary to discuss the factual background in detail. It will suffice to summarize. The general effect of the amendment is a revision of the boundaries of the central business district of the borough, retaining the general location of the district in and about Eagle Rock Avenue, between Livingston Avenue and Roseland Avenue, but relegating part of the district to a residential status and adding some residential territory to the district. The principal accretion of residential property to the business district under the revision and the real bone of contention in this litigation is an aggregation of four lots in and about the northeast corner of Roseland Avenue and Eagle Rock Avenue. The largest of these lots, with a frontage of 260 feet on Roseland Avenue and 200 feet on Eagle Rock Avenue, is property of the defendant, Roseland Methodist Protestant *78 Church, the site of its parsonage, a one-family residence. The church itself is situated on the north side of Roseland Avenue, several hundred feet east of the parsonage and within the same block.
The record before us leaves no doubt that the proceedings culminating in the adoption of this ordinance were initiated by the application of the church and of counsel for the defendant, the Half Dime Savings Bank, holder of an option for the purchase of the parsonage property for intended use for banking purposes, "for an amendment to the borough zoning ordinance to change the zone" of an area inclusive of the parsonage site "from the residence district to the Business district." A letter dated January 18, 1955 from counsel for the purchaser to the planning board of the municipality frankly avowed the object of the application, without specifying the identity of the purchaser.
The letter was read at a meeting of the planning board on February 1, 1955, and objection was expressed to opening the block to "general business," but the idea of a bank on the property was received favorably. It was decided to suggest that the applicant apply for a variance before the board of adjustment. At the next meeting of the planning board, February 3, 1955, the secretary advised the board that, upon advice of the borough counsel, he had not sent the authorized communication to the applicant, and he suggested that the board meet informally with the trustees of the church and a representative of the purchaser. Mr. Diecks, a member both of the board and of the church, undertook to arrange such a meeting, which took place February 24, 1955. Later discussions of the project included members of the borough council. There was some dissatisfaction over the fact that the bank planned to begin banking operations on a trial basis in the existing residence structure. Nevertheless, plans for the zone revision went forward, and the borough's planning expert, Mr. Boyd, was consulted.
On May 4, 1955 the chairman of the planning board wrote the mayor and council recommending, in substance, the zone revision later effected, and giving two reasons: first, a *79 previously projected extension of Livingston Avenue, apparently planned as the westerly boundary of the business district, appeared to be indefinitely postponed, and it was, therefore, felt that "zoning boundaries should conform to a more realistic concept"; second, the proposed change would make "possible the sale of this land [parsonage site] to the Half Dime Savings Bank of Orange for use as a branch."
At a special meeting of the planning board on June 21, 1955 it approved a draft of the revision ordinance, and the resolution of approval was sent to the council. On June 28, 1955 the ordinance was passed by the council on first reading, and, after public hearing on July 12, 1955, it was passed on final reading.
At the trial in the Law Division the ordinance was attacked primarily on the grounds that it constituted spot zoning and was not adopted "in accordance with a comprehensive plan," as required by R.S. 40:55-32. But the plaintiffs also subpoenaed Mr. Diecks, a planning board member, as noted above, and Mr. Ebersbach, a member both of the planning board and council, to testify concerning their "self-interest" in the subject matter of the ordinance. Counsel for the defendants objected on the ground that self-interest was not an issue in the case under the pretrial order and informed the court that he had therefore instructed the witnesses not to be present. Plaintiffs thereupon asked that the pretrial order be amended, informing the court that both Diecks and Ebersbach were members of the defendant Roseland Methodist Protestant Church, and calling its attention to the statute governing planning boards, N.J.S.A. 40:55-1.4 (L. 1953, c. 433, p. 2170, § 4), which provides that:
"No member of the planning board shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest."
The trial court refused to allow an amendment of the pretrial order to set up the issue. Having regard to the *80 important public interest subserved by the statute cited, we think the refusal of the motion was error. R.R. 4:15-2 provides that when evidence is objected to at the trial as beyond the scope of the issues fixed by the pretrial order,
"* * * the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." (Italics added)
See Ajamian v. Schlanger, 14 N.J. 483, 487 (1954); Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 370 (1954).
Concededly, amendment of the pretrial order at the trial is ordinarily a matter for the sound discretion of the trial court, but we regard the supervening public policy of the statutory prohibition here called to the attention of the trial court as so impelling as to have practically dictated an amendment of the pleadings and pretrial order to enable the court to determine the question. It does not appear that defendants would in anywise have been prejudiced on the merits of the question by introduction of the issue into the litigation, as the court could have received the proofs and permitted the subsequent submission of legal argument on the subject by counsel, or, as provided by the rule of court, even a continuance of the hearing if necessary.
We turn to the merits of the point raised, there being no dispute as to the material facts.
It is asserted by plaintiffs and not denied by defendants that Diecks attended and took part in every meeting of the planning board and voted for the resolution of approval of the ordinance; that Ebersbach voted, as a member of the planning board, to recommend the revision ordinance, but did not participate in the vote to recommend the specific ordinance approved by the board on June 21, 1955, nor, as a member of the council, did he vote on the question of adoption of the ordinance.
*81 The statutory disqualification is markedly broadly couched, extending to personal as well as financial interest, "directly or indirectly." There is thus evidenced an intent that the bar is not confined to instances of possible material gain but that it extends to any situation in which the personal interest of a board member in the "matter" before it, direct or indirect, may have the capacity to exert an influence on his action in the matter. This is the construction of the statute which accords with its obvious purpose of promoting impartiality in the performance by planning boards of their important public duties and is, therefore, that which we should adopt. See Meyers v. Mayor and Council of Borough of East Paterson, 21 N.J. 357, 360 (1956).
There can be no doubt that the "application" of the church and the bank for adoption of the zoning amendment made that application, in practical effect, an integral part of the "matter" before the board, and that the church consequently had a direct interest in the matter of the amendment. It is our considered conclusion that Diecks had a direct personal interest in the church and therefore an indirect personal interest in the matter of the proposed ordinance. In that interest inhered the potential for influence of his action in favor of what the church wanted. It is sought to distinguish the situation of Diecks from that of a trustee or officer of the church. But such a distinction is not material. A trustee may have responsibility for management of the church's affairs, but he has no more "interest" in the church, its affairs and well-being than any other member. All of the members of a non-pecuniary organization must be deemed to have the same relative interest in it (although non-pecuniary) as the stockholders have in a corporation. Cf. Wiesenthal v. Atlantic City, 73 N.J.L. 245 (Sup. Ct. 1906); and see Cobble Close Farm v. Board of Adjustment of Middletown, 10 N.J. 442, 454 (1952). The totality of interest in a church obviously resides in its entire membership. A stockholder of a corporation interested in a municipal resolution is disqualified to act thereon as a member of the governing body. (State) West Jersey Traction *82 Co. v. Board of Works, 56 N.J.L. 431 (Sup. Ct. 1894), affirmed Camden Horse R. Co. v. West Jersey Traction Co., 57 N.J.L. 710 (E. & A. 1895). That the "interested" member of the public body is in fact completely free of any improper or pecuniary motivation for his official action is immaterial if he has what in law amounts to an interest in the transaction. Ames v. Montclair, 97 N.J. Eq. 60, 64 (Ch. 1925). The purpose of the statute is prophylaxis against misconduct and its effect can be exerted fully only if it is applied undiscriminatingly where applicable.
At the oral argument counsel for the municipality conceded that if the church had been applying for a zoning variance for the property, Diecks' interest in the church would disqualify his participation, were he a member of the board of adjustment, as such official action would be quasi-judicial, whereas here the planning board was acting in a quasi-legislative capacity. But the statute refers to "any matter" before the board, and we are not at liberty to curtail the literal scope of the act to excise a situation fully within its apparent public policy. In any event, it has so been recently held by another Part of this Division, and we fully concur. Hochberg v. Borough of Freehold, 40 N.J. Super. 276, 282 (App. Div. 1956). Therefore the long-maintained distinction between legislative and quasi-judicial functions of public bodies in matters of disqualifying interest, Pyatt v. Mayor and Council of Dunellen, 9 N.J. 548, 555 (1952), is not presently applicable.
Since the statute requires zoning amendments to be submitted for planning board action as a prerequisite to adoption by the municipality, N.J.S.A. 40:55-33, Hasbrouck Heights Hosp. Ass'n v. Borough of Hasbrouck Heights, 15 N.J. 447 (1954), the infecting interest of Diecks invalidated the planning board approval, and, perforce, the action of the council. Hochberg v. Borough of Freehold, supra.
We have examined out-of-state authorities on the general question before us submitted by defendants but do not find them in point. We are controlled by our own statute, its obviously broad sweep and the manifest policy which underlies *83 it. Diecks' interest in the matter invalidates the ordinance and requires reversal of the judgment of the Law Division.
Our conclusion concerning the effect of Diecks' interest makes it unnecessary to consider the effect of Ebersbach's participation in the deliberations of both the planning board and council short of voting on the ordinance. But see Pressey v. Hillsborough Tp., 37 N.J. Super. 486, 492 (App. Div. 1955); Piggott v. Borough of Hopewell, 22 N.J. Super. 106, 112 (Law Div. 1952). Certainly he ought not to have participated in the discussion of either body on the subject, as a matter of salutary policy.
We have given thought to the question as to whether we should express an opinion on the validity of the ordinance as against its asserted insufficiencies in zoning law. We have concluded we ought not to do so in the particular fact situation presented. We consider that the points of objection raised by plaintiffs raise a close legal question as to spot zoning and the matter of accordance with a comprehensive plan, in the light of Conlon v. Board of Public Works, Paterson, 11 N.J. 363 (1953). Upon the rendition of the present decision, nothing will be pending before the municipality, and we ought to avoid any encouragement of renewal of the application or of favorable planning board action thereon which might ensue from a favorable decision on our part on the legal question. The responsibility to decide anew on this matter, if it is revived before the planning board, belongs to that body alone, in the first instance. By the same token we should eschew expression of any adverse legal conclusion which might not be applicable in the particular factual setting which would exist if and when the matter were again to engage the attention of the local authorities.
Judgment reversed; no costs.