56 N.J. Super. 411 (1959)
153 A.2d 378
L.L. CONSTANTIN & CO., A CORPORATION, PLAINTIFF,
v.
R.P. HOLDING CORP., A CORPORATION, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 25, 1959.
*413 Mr. Milton Rosenkranz, attorney for plaintiff.
Messrs. Bracken & Walsh, attorneys for defendant R.P. Holding Corp.
Messrs. Morrison, Lloyd & Griggs, attorneys for defendant Charles Denby.
Messrs. Smith, Stratton & Wise, attorneys for defendant Continental Bank & Trust Company, receiver.
COLIE, J.S.C.
L.L. Constantin & Co., a New Jersey corporation, filed a complaint against R.P. Holding Corp., Charles Denby, Continental Bank & Trust Co. as receiver of Inland Empire Insurance Co., and Royal American *414 Insurance Co., seeking a declaratory judgment stating the rights and obligations of the parties hereto in connection with preferred stock issued by the plaintiff corporation. Royal American Insurance Co. has not answered and a default has been taken against it.
The controversy between the plaintiff and defendants arises from the legal effect of an amendment on December 23, 1952 of the certificate of incorporation which read, so far as pertinent:
"By authorizing the issuance of fifty thousand (50,000) shares of preferred stock having a par value of Ten dollars ($10.00) each. The holders of the preferred stock shall be entitled to receive, and the Company shall be bound to pay thereon, but only out of the net profits of the Company, a fixed yearly dividend of fifty cents (50¢) per share, payable semi-annually. The said dividend shall be cumulative. Preferred stockholders shall have no voting rights. The stock shall be redeemable on and after January 2nd, 1955, at Ten dollars and fifty cents ($10.50) per share."
An identical legend appears upon the face of each preferred stock certificate.
The stock holdings of the respective defendants came about as follows: On December 31, 1953 Guardian Insurance Company acquired 40,000 shares, 10,000 of which it transferred to Arizona Western Insurance Company on October 1, 1954. Arizona transferred its holding to S & C Trading Co., Inc. on June 11, 1956, and on November 22, 1957 S & C Trading transferred its holdings to R.P. Holding Corp. Charles Denby holds 8,000 shares, having acquired 10,000 shares from Echo Falls Farm, Inc., on August 12, 1953, and thereafter having sold 2,000 shares to plaintiff on January 11, 1955. In June 1954 Guardian transferred 30,000 shares to Central Standard Insurance Company. On December 31, 1954 Central transferred all or part of its shares to Inland Empire Insurance Company, and thereafter Continental Bank and Trust Company took possession of Inland's holdings of 30,000 shares by virtue of Continental's appointment as receiver of Inland on November *415 29, 1955 by order of the U.S. District Court for the District of Utah.
Thus it appears that defendants' stock interests were acquired on the following dates:

 R.P. Holding Corp. November 22, 1957
 Charles Denby August 12, 1953
 Continental November 29, 1955

As to R.P. Holding, its predecessor acquired the stock June 11, 1956; Continental's predecessor acquired its stock December 31, 1954.
In 1956 Arizona Western sued Constantin in the U.S. District Court for the District of New Jersey. In that action S & C Trading Co., Inc. (predecessor in title to R.P. Holding) intervened. The first count sought a judgment for Arizona because of non-payment of a dividend on the preferred stock admittedly declared on December 28, 1954. A partial summary judgment was entered in favor of Arizona and the amount thereof, $5,504.16, paid into the registry of the court pending outcome to an action between Arizona and S & C Trading Co. The second count was dismissed by stipulation of Arizona and Constantin. The third count asserted that under Constantin's amended certificate of incorporation and the preferred stock certificate, Constantin was bound to pay Arizona, out of net profits, a fixed yearly dividend of 50¢ a share; that net profits were available in 1955 but no dividend had been paid although Arizona had made demand therefor. Constantin then moved for summary judgment in its favor; Arizona made a cross-motion for summary judgment. The U.S. District Court granted judgment in favor of Constantin, denying Arizona's cross-motion. On appeal to the United States Court of Appeals for the Third Circuit, that court reversed the judgment below. Arizona Western Ins. Co. v. L.L. Constantin & Co., 247 F.2d 388 (3 Cir. 1957). The rationale of the opinion is found in the following excerpt therefrom.
*416 "The amended certificate of incorporation in the case at bar provides in pertinent part that, `The holders of the preferred stock shall be entitled to receive, and the Company shall be bound to pay thereon, but only out of the net profits of the Company, a fixed yearly dividend of fifty cents (50¢) per share, payable semi-annually.' Identical language is found in the preferred stock certificate. Words could not more clearly or plainly manifest that Constantin agreed to be bound to pay dividends where net profits were available for the purpose."
The appeal was decided July 31, 1957, "as amended Sept. 10, 1957." In the interim between institution of the action in the U.S. District Court and decision on appeal, Constantin on September 28, 1956 held a meeting of its board of directors and passed a resolution which so far as pertinent reads:
"The holders of the preferred stock shall be entitled to receive (cumulative) dividends, as and when declared by the Board of Directors, out of its surplus or net profits, as determined pursuant and subject to the provisions of the General Corporation Law of the State of New Jersey, at the rate of 50¢ per annum * * *."
New preferred stock certificates were printed bearing, inter alia, the above language.
At the pretrial conference, the complaint was amended to allege that
"the corporate by-laws in article 7, provide that dividends are to be declared by the Board of Directors when expedient, and that unless the directors declare a dividend, the same does not become due and payable."
By the pretrial order entered herein the legal issues were determined to be:
1. Is this court bound by the determination of the Circuit Court of Appeals on the question of whether or not dividends on the preferred stock are mandatory.
2. Construction of the 1952 amendment of the certificate of incorporation of Constantin, to determine rights of preferred stockholders to dividends  whether payment of such dividends is mandatory or discretionary.
*417 3. If payment of dividends is discretionary, whether failure to declare and pay the same constitute abuse of discretion under the circumstances.
4. Determination of meaning of the term "net profits" in the 1952 amendment of the certificate of incorporation of Constantin.
5. Determination of the validity of the 1956 amendment to the certificate of incorporation of Constantin.
6. What is the validity, proper construction and interpretation of article 7 of the corporate by-laws and are the directors chargeable with an abuse of discretion thereunder.
Dealing first with the effect of the decision in Arizona Western Insurance Co. v. L.L. Constantin, supra, the rule is clear that a right, question or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. Robinson-Shore Development Co. v. Gallagher, 26 N.J. 59 (1958). There were but two issues before the court in Arizona Western Insurance Co. v. L.L. Constantin: first, a claim for the dividend declared December 28, 1954, and second, whether the 1952 amendment made the payment of a dividend mandatory, if net profits were available therefor. The present defendants argue that the holding by the Circuit Court of Appeals that payment of the dividend was mandatory is res adjudicata in this suit. No one questions that the last issue is identical in the two actions, but the parties are not the same and therefore to bring the case within the rule as stated in Robinson-Shore v. Gallagher, supra, it must be shown that the present defendants, or some of them, are privies.
"Privity within the view of the rule of res judicata ordinarily means identity of interest, through succession to the same rights *418 of property involved in the prior litigation. * * * Privity in the sense of this principle connotes such connection in interest with the litigation and the subject matter as in reason and justice precludes a relitigation of the issue. In a word, a litigant is entitled to his day in court, but not to relitigate an issue once determined by a valid judgment."
Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704 (E. & A. 1948). See Restatement, Law of Judgments, sec. 83, comment (a).
"Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The word `privy' includes those who control an action although not parties to it (see Sec. 84); those whose interests are represented by a party to the action (see Secs. 85-88); successors in interest to those having derivative claims (Secs. 88-89)."
Defendants Denby, Continental Bank and Trust Co., and R.P. Holding Co. were not parties in the federal court action, however, S & C Trading Co. intervened therein and became a party. Neither Denby nor Continental intervened, and presumably could have done so since S & C Trading Co., whose interests were identical to that of Denby and Continental, was permitted to do so. Neither Charles Denby nor Continental were privies within the meaning of that term as defined above. R.P. Holding Co., however, is in privity since it succeeded to the same rights of property enjoyed by S & C Trading Co. The Arizona Western case was not a class action and the plaintiffs therein were representing no preferred stockholders other than themselves.
In Sbarbero v. Miller, 72 N.J. Eq. 248 (Ch. 1906), affirmed on the opinion below 74 N.J. Eq. 453 (E. & A. 1908), Vice-Chancellor Garrison said:
"The absolute necessity of mutuality in estoppels by record requires that the court should not hold a judgment conclusive in favor of a person unless it would be equally conclusive against him." *419 This rule finds support in the comment, section 96 of the Restatement, Law of Judgments, at page 473:
"Relitigation of an issue with a new adversary is permitted because of the assumed unfairness of binding one party to a proceeding by the rules of res judicata while the other party is not bound: where there is a new adversary who was not privy to the first action, since the second adversary would not be bound by the rules of res judicata, the person who was a party to the first proceeding should not be bound either. This desirability for equality between litigating parties with reference to the rules of res judicata is not, however, of pervading importance and disappears when there are countervailing reasons for requiring one to be bound while the other is not."
Sbarbero v. Miller, supra, was cited with approval in Miller v. Stieglitz, 113 N.J.L. 40 (E. & A. 1934).
This court is not bound by the decision in the Arizona case on the theory of res adjudicata or collateral estoppel so far as defendants Denby or Continental Bank and Trust Company are concerned. As to R.P. Holding Corp., it is in privity with S & C Trading Co., Inc., and therefore it may properly raise the defense of res adjudicata. Even so, there is presented the further question as to whether the decision of the Court of Appeals was correct under the New Jersey law. That court recognized that the question of the interpretation of the certificate of incorporation must be determined by the law of New Jersey.
Standing alone, the 1952 amendment providing that "the holders of the preferred stock shall be entitled to receive, and the company shall be bound to pay * * *" presents no problem for construction. There is no ambiguity which would entitle this court to construe the above quoted direction. As the Court of Appeals said [247 F.2d 391]: "Words could not more clearly or plainly manifest that Constantin agreed to be bound to pay dividends where net profits were available for the purpose." However, the contract between Constantin and its preferred shareholders is to be found not alone in the language of the 1952 amendment but in the entire certificate of incorporation, as amended, and the applicable *420 provisions of the statute in force at the time of incorporation, i.e., 1947. Franzblau v. Capital Securities Co., 2 N.J. Super. 517 (Ch. 1949). The General Corporation Act provides that "the business of every corporation shall be managed by its board of directors * * *," and "unless otherwise provided in the certificate of incorporation, or in a by-law adopted by a vote of at least a majority of the stockholders." R.S. 14:8-20, from which the last quote is borrowed, reads:

"14:8-20. Working capital; directors may vary; dividends
Unless otherwise provided in the certificate of incorporation, or in a by-law adopted by a vote of at least a majority of the stockholders, the directors of every corporation organized under this title may, in their discretion, from time to time, fix and vary the amount of the working capital of the corporation and determine what, if any, dividends shall be declared and paid to stockholders out of its surplus or net profits. Dividends may be declared and paid in capital stock with or without par value."
The legislative history behind the enactment of R.S. 14:8-20 demonstrates that the declaration of dividends has had the attention of the Legislature, and its attempts to limit control over dividends were deemed unsatisfactory and ended, for the time being, in the enactment last quoted. The prior legislative attempts have been commented upon by our courts in no flattering terms. "* * * [T]he legislative experiment, in controlling the discretion of the managers of corporations in respect of the distribution of profits was somewhat dangerous, and brought about a situation which was liable to be productive of mischief, and exposed corporations to malicious and injurious attacks." Stevens v. United States Steel, 68 N.J. Eq. 373 (Ch. 1905). "Naturally, the amount needed for the legitimate purposes of the company's business must be determined by the directors, who are intrusted with the management of the company." Murray v. Beattie Mfg. Co., 79 N.J. Eq. 604 (E. & A. 1911).
Public policy with respect to corporate management has been established by the mandate of the Legislature to *421 be that "the business of every corporation shall be managed by its board of directors" and that "the directors of every corporation * * * may * * * determine what, if any, dividends shall be declared and paid to stockholders out of its surplus or net profits." Recognizing that the situation might arise in which this public policy might not be in the best interests of the corporation and its shareholders, the Legislature provided a means to permit the corporation to act contrary to such public policy. The device employed was to qualify the imposed discretion in the directors by providing that it could be avoided, but only where "otherwise provided in the certificate of incorporation, or in a by-law adopted by a vote of at least a majority of the stockholders * * *."
Article 7 of Constantin's by-laws reads:
"The Board of Directors shall by vote declare dividends from the surplus profits of the Corporation whenever, in their opinion, the condition of the Corporation's affairs will render it expedient for such dividend to be declared."
It is, in part, the inconsistency between the discretion imposed on the directors as to dividends and the mandatory declaration allegedly provided for in the 1952 amendment that requires judicial construction as between the charter, the by-laws and the statute. It may be conceded at the outset that where inconsistency exists between by-laws and certificate of incorporation, the latter ordinarily governs and it would seem more so where, as here, the conflict arose some years after the enactment of the by-law. However, the provision in the quoted by-law is consistent with R.S. 14:8-20 which vested discretion in the directors as to dividend declarations, and the fact that Article 7 of the by-laws was not amended when the 1952 amendment was adopted is some evidence that the 1952 amendment was not intended to divest the directors of discretion.
Can it be said that the statement that "the holders of the preferred stock shall be entitled to receive, and the *422 Company shall be bound to pay * * *" meets the requirements of "unless otherwise provided in the certificate of incorporation, or in a by-law * * *" of Constantin? This court must answer that question in the negative. The statute is clear that the corporate business is to be managed by its directors and that, unless otherwise provided in the charter or by-law the directors may, in their discretion determine what if any dividends shall be declared and paid. In such an important area of corporate policy as is the discretion of the board of directors as to declaration of dividends little should be left to implication. It is only by implication that the language "entitled to receive * * * and bound to pay" can be said to override the statutory discretion embodied in R.S. 14:8-20. As stated in Newark Publishers' Ass'n. v. Newark Typographical Union, 22 N.J. 419, 426 (1956):
"Interpretation is the process of giving meaning to the symbols of expression, taken and compared together in the setting of the circumstances. A subsidiary provision is not so to be interpreted as to conflict with the obvious `dominant' or `principal' purpose of the contract. We seek for the intention of the parties; and to this end the writing is to have a reasonable interpretation. Disproportionate emphasis upon a word or clause or a single provision does not serve the purpose of interpretation. Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose; and thus the literal sense of terms may be qualified by the context." (Italics mine)
In light of the statutory provisions, the language of Article 7 of the by-laws and the well-settled attitude of the courts against implied repealers and the absence of a "clear and peremptory" denial of the directors' statutory right to discretionary control of dividends, the court holds that the amendment of 1952 does not make the payment of a dividend mandatory, if net profits are available therefor.
The holding of the court that the declaration of a dividend on the preferred stock is discretionary leaves for consideration only the question as to whether the failure to *423 declare and pay dividends constituted abuse of discretion under the circumstances.
It is settled that the declaration of dividends is within the discretion of the board of directors and that in the absence of abuse thereof, the court will not interfere. To entitle a stockholder to relief, the proper grounds therefor must clearly appear. The accountant called on behalf of the plaintiff testified that in computing net profits or surplus available for the payment of dividends, the directors were bound to make provision for contingent liabilities, and that the directors, in conformity with good accounting practice, were obligated to set aside funds to take care of such contingent liabilities. The accountant for the defendants, while he did not feel that it should be shown in the actual financial statement, testified that contingent liabilities should be called to their attention. He said:
"I would inform them as noted in the notes to the financial statement as to what the surplus is and to what this contingency is, and they would determine whether or not dividends were to be paid or would not have to be paid. They would have all of the facts before them for the necessary determination, inasmuch as this morning we were told that if they did it wrong, they would be personally liable." (Italics mine)
It thus appears from the experts themselves that the contingent liabilities of the corporation are matters that enter into the directors' judgment as to whether or not a dividend should be declared for a given year, and this court finds as a fact that the contingent income tax liabilities for 1952 through 1955 and the renegotiation liability for the years 1952 and 1953 were ample reasons why the board of directors withheld the declaration of a dividend on the preferred stock. There was no evidence submitted in this case which would justify this court in finding that the directors had abused their discretion in failing to declare a dividend on the preferred stock for the years in question.
A form of judgment may be submitted in accordance herewith.