**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2857-16T4

DAVID USECHAK and
LOUISE USECHAK,

       Plaintiffs-Respondents/
       Cross-Appellants,

v.

BOROUGH OF SHREWSBURY
PLANNING BOARD,

       Defendant-Respondent,

and

FRANCIS X. MOORE, JR. and
SUZANNE MOORE,

       Defendants-Appellants/
       Cross-Respondents.

_____

Argued September 21, 2018 – Decided  December 7, 2018

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0311-16.

Paul H. Schneider argued the cause for appellants/cross-respondents (Giordano, Halleran & Ciesla, PC, attorneys; Paul H. Schneider, of counsel and on the brief).

Edward F. Liston, Jr., argued the cause for respondents/cross-appellants.

Michele R. Donato argued the cause for respondent Borough of Shrewsbury Planning Board.

PER CURIAM

In this action in lieu of prerogative writs, defendants Francis X. Moore, Jr. and Suzanne Moore (the Moores) appeal from the January 24, 2017 Law Division order, which reversed the decision of defendant Borough of Shrewsbury Planning Board (Board) granting the Moores' application for minor subdivision approval with variances. Plaintiffs David Usechak and Louise Usechak (the Usechaks) cross-appeal from the same order. We affirm in part, and reverse in part.

I.

The subject property is an approximately 1.8-acre lot (78,594 square feet) that fronts on Corn Lane and Williamsburg Drive in Shrewsbury. The property is located in the R-1 single-family zone, where the minimum lot size is 45,000 square feet, the minimum lot width/frontage is 150 feet, the minimum front and rear yard setbacks are fifty feet, and the minimum side yard setback is thirty

A-2857-16T4

feet. There is an existing two-story single-family dwelling on the lot that fronts on Corn Lane. The Usechaks are adjacent property owners whose approximately 1.27-acre lot (55,321 square feet) fronts on Corn Lane and Williamsburg Drive.

Malachi and Linda Kenney (the Kenneys) were prior owners of the property. In 1991, Paul S. Kolarsick and Maria Ann Kolarsick (the Kolarsicks), as contract purchasers, submitted an application for minor subdivision approval with bulk variances to subdivide the property into two nonconforming lots of 39,313 square feet and 39,310 square feet (the first application). Because the existing dwelling on the property was only 44.7 feet from Corn Lane where 50 feet is required, the Kolarsicks also sought continuation of the pre-existing bulk deficiency for front-yard setback. The Board denied the first application on the merits.

The Kolarsicks and Kenneys did not appeal the Board's determination, and the Kolarsick's did not purchase the property. Daniel and Susan Whalen purchased the property in 1992, and the Moores purchased the property from them in 2005.

In 2015, the Moores submitted an application that was identical to the first application for minor subdivision approval with variance relief to subdivide the property into two nonconforming lots. After learning of the Board's prior denial

of the first application, the Moores revised their application to propose subdividing the property into one non-conforming undersized lot of 33,593 square feet containing the existing dwelling fronting on Corn Lane (the non-conforming undersized lot), and one fully conforming lot of 45,002 square feet fronting on Williamsburg Drive (the conforming lot) (the second application). The second application sought variance relief only for the non-conforming, undersized lot for lot size, rear yard setback, impervious area coverage, building area coverage, and a continuation of a prior non-conforming front-yard setback.[1]

In a December 16, 2015 resolution, the Board granted the second application, concluding that res judicata did not bar its consideration of that application on the merits. The Board found the property had changed ownership several times since 1992, and the same parties were not involved. The Board compared the second application to the first application and found the two applications were substantially different and the second application presented a different plan and different request for relief than the first application. The

---

[1] The proposed rear yard for Lot 5.01 was 33.6 feet where 50 feet is required. As a result of the proposed subdivision, maximum lot coverage for impervious area is 24 percent and 20 percent is allowed. This constitutes 1000 square feet of additional impervious coverage. The proposed maximum building coverage is 10.44 percent and percent is permitted, which is approximately 150 square feet additional coverage.

4

Board also found that the character of the neighborhood had changed since 1992, as the Williamsburg development was not fully built in 1992 when the Board considered the first application.

The Usechaks filed a complaint in lieu of prerogative writs, challenging the Board's decision. They argued the proceedings below were nullified because Board member Judy Martinelly had a conflict of interest and there was no Stewart[2] notice of a meeting between the Moores and the Board on March 18, 2015.[3] The Usechaks also argued that res judicata precluded the Board from considering the second application on the merits.

Citing N.J.S.A. 40:55D-23(b), the trial court found that the Usechaks failed to show that Martinelly had a direct or indirect personal interest in the Moores' application. The court also found the Moores' appearance before the Board on March 18, 2015 was for a "Concept Plan Review," which is permitted under N.J.S.A. 40:55D-10.1. Thus, the court held the proceedings were not nullified.

---

[2] Stewart v. Planning Bd. of Manalapan, 334 N.J. Super. 123, 130 (Law Div. 1999) (requiring notice to the owners of all real property "within 200 feet in all directions of the property which is the subject of the hearing [before the Planning Board]").

[3] The first hearing on the second application occurred on July 15, 2015.

A-2857-16T4

However, the court concluded the Board's finding that res judicata did not bar its consideration of the second application on the merits was arbitrary, capricious, and unreasonable. The court found that variance determinations adhere to the property and are not personal to the applicant, and the Moores were successors in both legal and equitable title.

The court found that the alteration of the subdivision plan by moving the lot line twenty-one feet north and variations on the rear and front setbacks and percentage of the impervious surface area were merely minor changes. The court concluded that the only difference between the first and second applications was the location of the subdivision line, and such minor change did not constitute a sufficient change to warrant the Board's consideration of the second application on the merits.

Lastly, the court found there was no substantial change in the conditions affecting the property since 1992 because the Master Plan anticipated and approved the Williamsburg development and there was no change in the Master Plan or zoning of the property. The court concluded that other than the intended Williamsburg development, there was no substantial change in the facts and the circumstances of the second application.

6

II.

On appeal, the Moores contend the court erred in holding that res judicata barred the Board's consideration of the second application on the merits.[4] The Moores argue they were not in privity with or successors in title to the Kolarsicks because the Kolarsicks made their application as contract purchasers but never closed on the property and are not in the chain of title.

The Moores argue that even if they are deemed the same parties, the Board correctly determined that the second application was substantially different from the first application and that there were substantial changes in the conditions affecting the property from the first application to warrant its consideration of the second application on the merits.

In reviewing a planning board's decision, we use the same standard used by the trial court. Bd. of Educ. Of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 433 (App. Div. 2009). Like the trial court, our

---

[4] We decline to address the Usechaks' responding argument that regardless of whether res judicata barred the second application, we should exercise original jurisdiction and address whether the Board's decision to grant the second application was arbitrary, capricious, or unreasonable. This argument goes beyond the scope of the trial court's decision and the Usechaks concede it was not part of their cross-appeal. See Bogey's Trucking & Paving, Inc. v. Indian Harbor Ins. Co., 395 N.J. Super. 59, 64 n.3 (App. Div. 2007); Walrond v. Cty. of Somerset, 382 N.J. Super. 227, 231 n.2 (App. Div. 2006).

review of a planning board's decision is limited to determining whether the board could reasonably have reached its decision. Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987) (citing Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 285 (1965)). Decisions on land use applications are entrusted to the sound discretion of the planning board. Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 558 (1988). Because the board has "'peculiar knowledge of local conditions,' its factual findings are entitled to substantial deference and are presumed to be valid." Grubbs v. Slothower, 389 N.J. Super. 377, 382 (App. Div. 2007) (quoting Burbridge v. Mine Hill Twp., 117 N.J. 376, 385 (1990)).

Therefore, a court generally "will not substitute its judgment for that of a board 'even when it is doubtful about the wisdom of the action.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor, 172 N.J. 75, 81 (2002) (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment of Harrington Park, 90 F. Supp. 2d 557, 563 (D.N.J. 2000)). We give deference to a planning board's decision and reverse only if its action was arbitrary, capricious, or unreasonable. Zilinsky v. Zoning Bd. of Adj. of Verona, 105 N.J. 363, 368 (1987). However, where the issue on appeal involves a purely legal question, we afford no special deference to the trial court's or the planning board's decision, and must determine if the board understood and applied the law correctly. D. Lobi

A-2857-16T4

Enters., Inc. v. Planning/Zoning Bd. of Sea Bright, 408 N.J. Super. 345, 351 (App. Div. 2009).

Res judicata applies to a second land use application where the same parties and same property are involved in the application and there is no sufficient change in the application itself or in the conditions surrounding the property to warrant consideration of the application.[5] Russell v. Bd. of Adjustment of Tenafly, 31 N.J. 58, 65 (1959). In making a determination as to whether res judicata applies, the planning board's analysis should be "liberally construed in favor of the applicant[.]" Id. at 66.

The same parties are involved in the application where the applicants are in privity. As we have held:

> Privity within the view of the rule of res judicata ordinarily means identity of interest, through succession to the same right of property involved in the prior litigation. . . . Privity in the sense of this principle connotes such connection in interest with the litigation and the subject matter as in reason and justice precludes a relitigation of the issue[.]
>
> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if

---

[5] The parties do not dispute that the same property is involved in the second application.

they were parties. The word "privy" includes . . . those whose interests are represented by a party to the action. . . .

[L.L. Constantin & Co. v. R. P. Holding Corp., 56 N.J. Super. 411, 417-18 (1959) (quoting Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704 (E. & A. 1948); Restatement (First) of Judgments § 83 (1942)).]

The Moores were in privity with the Kolarsicks, as they both made their applications through succession to the same right of the property involved in the first application. Id. at 417. Although the Moores were not parties to the first application, they were connected with the application, as their interests in the outcome were the same. Further, although the Kolarsicks were contract purchasers of the property and did not actually obtain title, they made the first application in the same capacity as the Moores. Accordingly, the Board was arbitrary, capricious and unreasonable in concluding the same parties were not involved. However, the Board was not arbitrary, capricious, or unreasonable in concluding there were sufficient changes in the second application and the conditions affecting the property from the first application to warrant its consideration of the second application on the merits.

A planning board is not precluded from considering a second application if the application contains sufficient changes. Bressman v. Gash, 131 N.J. 517, 527 (1993) (quoting Russell, 31 N.J. at 66). The planning board's determination

of the sufficiency of a change "should 'be overturned on review only if it shown to be unreasonable, arbitrary or capricious.'" Ibid. (quoting Russell, 31 N.J. at 67). "Thus, the question is not whether a reviewing court would have reached a different conclusion if it had initially decided the matter, but whether the Planning Board was arbitrary, capricious, or unreasonable in concluding that [the] second application was sufficiently different to justify considering it on the merits." Ibid. (citation omitted).

In this case, the court concluded that moving the lot line twenty-one feet north was not a substantial change warranting the Board's consideration of the second application on the merits. Case law supports a contrary conclusion. For example, in Russell, 31 N.J. at 63-64, the applicant initially applied for bulk variance relief for a twenty-five-foot front yard setback where seventy-five feet was required. The board denied the application. Ibid. The applicant filed a second application, increasing the front yard setback to thirty feet and decreasing the building coverage from eighteen percent to twelve percent. Id. at 66-67. The five-foot difference amounted to a twenty percent increase in the proposed setback. Id. at 67. The board found that res judicata did not bar the second application and approved it. Ibid. The Court upheld the board's decision,

noting that the increase in the front yard set back by just five feet constituted a sufficient change from the prior application. Id. at 67.

In Bressman, 131 N.J. at 527-28, the board found that res judicata did not apply to a second application that increased the rear yard setback from twenty-eight feet to thirty-two feet, eliminated coverage variances, and added a rear yard buffer to mitigate the rear yard set back variance. The Court found "the Planning Board was not arbitrary, capricious, or unreasonable in concluding that the differences justified its consideration of [the] application on the merits." Id. at 528.

Here, the changes in the second application were significant. Moving the lot line twenty-one feet north substantially changed both the sizes of the two lots and the variance relief required. The second application proposed one fully conforming lot and one non-conforming, undersized lot that required bulk variances, whereas the first application proposed two non-conforming, undersized lots that required bulk variances. The Board found the second application clearly presented a different plan with a different request for relief, considered the changes in the second application, and concluded the changes were sufficiently different to warrant consideration of the second application on

the merits. The Board's decision is supported by the record and entitled to substantial deference.

The court concluded there were no substantial changes in the conditions affecting the property from the first application to warrant consideration of the second application on the merits because the Master Plan contemplated the Williamsburg development and Master Plan and zoning ordinance for the property changed since the first application. Neither the court nor the Usechaks cited any authority supporting this conclusion.

The Williamsburg development, which is a cluster development located across from and to the immediate south of the property, was not fully developed in 1992, when the Board rejected the first application. Since that time, the development was completed and contains smaller lots of 22,500 square feet, which changed the character of the neighborhood. The second application more closely conforms with that development. In addition, there were other changes in the conditions affecting the property from the first application. Development on the conforming lot is now subject to stormwater management regulations that were not in effect or applicable to the property until 2004. See N.J.A.C. 7:8-1.1 to -6.3. The Board considered the changes and found they were sufficient to

warrant consideration of the second application on the merits. The Board's finding is supported by the record and entitled to substantial deference.

For these reasons, we reverse the January 24, 2017 order.

III.

On cross-appeal, the Usechaks contend the court erred in finding the proceedings before the Board were not nullified by Martinelly's conflict of interest. We disagree.

The Municipal Land Use Law (MLUL) provides that "[n]o member of the planning board shall be permitted to act on any matter in which he [or she] has, either directly or indirectly, any personal or financial interest." Randolph v. Brigantine Planning Bd., 405 N.J. Super. 215, 225 (App. Div. 2009) (first alteration in original) (quoting N.J.S.A. 40:55D-23(b)). "In commenting on the breadth of [N.J.S.A.] 40:55-1.4, the predecessor to [N.J.S.A.] 40:55D-23(b), which contains the identical disqualification language, we observed that the 'statutory disqualification is markedly broadly couched, extending to personal as well as financial interest, directly or indirectly.'" Ibid. (quoting Zell v. Borough of Roseland, 42 N.J. Super. 75, 81 (App. Div. 1956)). "The statutory bar 'is not confined to instances of possible material gain[,] but . . . it extends to any situation in which the personal interest of a board member in the "matter"

before it, direct or indirect, may have the capacity to exert an influence on his action in the matter.'" Ibid. (alteration in original) (quoting Zell, 42 N.J. Super. at 81).

"This provision of the MLUL codifies the common-law rule that '[a] public official is disqualified from participating in judicial or quasi[-]judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body.'" Ibid. (quoting Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993)). There are "four situations that require disqualification: (1) '[d]irect pecuniary interests'; (2) '[i]ndirect pecuniary interests'; (3) '[d]irect personal interest'; and (4) '[i]ndirect personal interest.'" Ibid. (alterations in original) (quoting Wyzykowski, 132 N.J. at 525-26). If a Board member has a conflict that requires disqualification, but participates in the proceedings anyway, then "the Board proceedings in their entirety must be voided and set aside." Id. at 232.

The record does not show that Martinelly had any interest, direct or indirect, in the outcome of the proceedings, as her only connection to the case was her involvement in the Moores' purchase of the property. This is likely not a conflict that required disqualification. Nevertheless, at the beginning of the first hearing on the second application, Martinelly recused herself and thereafter

15

did not participate in the proceedings or vote on the second application. Thus, the proceedings before the Board were not a nullity.

Although Martinelly voted to approve the meeting minutes from which she recused herself, this did not render the proceedings before the Board a nullity. Under the MLUL, it is the Board's resolution that reflects the deliberative and specific findings of fact and conclusions of law and therefore constitutes the official record of the Board's deliberations and ultimate approval of the second application. See N.J.S.A. 40:55D-10(g). Conversely, the minutes are an administrative record, which transcribes what occurs at each meeting. N.J.S.A. 40:55D-9(c). Therefore, voting on the minutes in their entirety is an administrative act, which did not affect the Board's quasi-judicial consideration of the second application or nullify the proceedings.

IV.

Lastly, the Usechaks contend the court erred in finding the proceedings before the Board were not nullified by the lack of a Stewart notice for the meeting held on March 18, 2015. This contention lacks merit.

"[N.J.S.A.] 40:55D-10.1 provides for informal review of the concept plan for development." Stewart, 334 N.J. Super. at 128. N.J.S.A. 40:55D-10.1 provides, in pertinent part, that

16

> [a]t the request of the developer, the planning board shall grant an informal review of a concept plan for a development for which the developer intends to prepare and submit an application for development. . . . The developer shall not be bound by any concept plan for which review is requested, and the planning board shall not be bound by any such review.

After an application has been submitted and in order to proceed with a hearing, "notice shall be given to the owners of all real property or shown on the current tax duplicates, located in the State and within 200 feet in all directions of the property which is the subject of the hearing." Stewart, 334 N.J. Super. at 130 (quoting N.J.S.A. 40:55D-12 to -12.3).

In this case, the Board held an informal review of a concept plan for a development on March 18, 2016. Thereafter, on June 3, 2016, the Moores submitted their first application to subdivide the property into two nonconforming lots. This application was to be the subject of the first hearing on July 15, 2015. The Moores provided notice of the hearing to residents within a two hundred foot radius of the property by mail on June 3, 2015, and by publication on June 5, 2015. However, at the July 15, 2015 hearing, the Moores submitted a revised application to subdivide the property into one conforming lot and one nonconforming, undersized lot with variance relief. The Board granted the Moores' motion to deem the revised application complete, and

ordered them to re-notice residents within a two hundred foot radius of the property at least ten days prior to the next Board meeting.

There was no <u>Stewart</u> violation here. The informal meeting on March 18, 2015 was for informal concept plan review and concerned a different application than the Board ultimately considered, and the meeting occurred before the Board deemed the Moores' revised application complete. Further, upon deeming the revised application complete, the Board ordered the Moores to re-notice residents within a two hundred foot radius of the property at least ten days prior to the next Board meeting. The Moores complied. Accordingly, the court correctly determined the proceedings before the Board were not nullified by the lack of a <u>Stewart</u> notice for the meeting held on March 18, 2015.

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2857-16T4