HAROLD G. FLETCHER *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF GREENWICH ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 8—decided November 25, 1969

*A. William Mottolese,* with whom, on the brief, was *Stewart H. Jones,* for the appellant (named defendant).

*Frederick L. Comley,* for the appellants (defendant John Carrott et al.).

*Francis X. Lennon, Jr.,* with whom was *Frederick W. Fawcett,* for the appellee (plaintiff).

ALCORN, J.  This zoning appeal appears to have arisen out of the plaintiff's status as the contract purchaser of a building lot in a tract of land which the Rosenstiel Foundation, an Ohio corporation authorized to do business in Connecticut, planned to subdivide into moderate priced homesites for a prospective association of homeowners of which the plaintiff was the president.

The plaintiff owns a home on East Elm Street in Greenwich which is in an R-7 zone.  On March 10, 1965, the Rosenstiel Foundation, hereinafter called the Foundation, owned an eighty-three-acre tract of land in Greenwich in an RA-4 zone about eight miles distant from the plaintiff's home.  The RA-4 zone allowed separate dwelling units on lots of four acres or more, and the R-7 zone required an area of 7000 square feet.

On March 10, 1965, the Foundation contracted to sell to the plaintiff a lot designated as number 101 within the eighty-three-acre tract for the price of

$965. The preamble to the contract recited that it was the seller's purpose to provide attractive building sites within the means of Greenwich citizens who now find it impossible to build in Greenwich; that the plaintiff wished to acquire the lot solely for a home for himself and his family; that the purpose could be accomplished only if the property was rezoned; and that to accomplish this end the plaintiff would join with others in seeking a change of zone and would appeal an unfavorable decision. It was agreed that the contract was not assignable without the approval of the Foundation and that the lot would be conveyed subject to zoning restrictions, taxes, restrictions imposed on all lots in the proposed subdivision, easements, and a share of the development and maintenance costs. The contract would be null and void if a change of zone was not granted.

On June 8, 1965, the plaintiff applied to the Greenwich planning and zoning commission for an amendment to the zoning regulations which would create two new zone categories in the Greenwich zoning regulations to be designated R-20W and RA-1W permitting respective minimum lot sizes of 20,000 square feet and one acre provided a water supply was furnished by other means than individual wells on each lot, or, in the alternative, for any amendment which would permit selective rezoning of lower density areas if water was supplied from an outside source. The application did not seek the zone change for the eighty-three-acre tract and was made on the basis of the plaintiff's ownership of his East Elm Street property as permitted by the zoning regulations.

On July 8, 1965, another application, which was signed by the plaintiff along with 120 other indi-

viduals and the Foundation, was made to the Greenwich planning and zoning commission to rezone the southerly portion of the eighty-three-acre tract to an RA-1W or an RA-1 zone and the remainder to an R-20W or an R-20 zone. The applicants were stated to be "owners of and contract purchasers of" the eighty-three-acre tract, and their application recited that the zone changes sought were intended to be the same as the zone categories requested in the plaintiff's application of June 8, 1965.

On February 25, 1966, the Foundation deeded the eighty-three-acre tract to the plaintiff, as trustee, and the deed was recorded in the Greenwich land records. On February 28, 1966, the plaintiff, as trustee, and the Foundation entered into a contract concerning the land so conveyed which provided that the plaintiff, as trustee, accepted the title subject to outstanding contracts of sale; that all incidents of ownership other than legal title were to remain in the Foundation, which would retain the obligation for all expenses of upkeep, municipal charges and taxes; that the trustee could contract for the sale of lots within the tract to purchasers approved by the Foundation; that the terms of the contract of sale previously made with the plaintiff on March 10, 1965, were incorporated by reference; and that, if the eighty-three acres were not rezoned in accordance with the plaintiff's application, the plaintiff would quitclaim the land to the Foundation. The contract which the plaintiff, as trustee, was empowered to make with purchasers was identical in terms with his own March 10, 1965, contract.

On the same date, February 28, 1966, the two rezoning applications which had been made on June 8, 1965, and July 8, 1965, came on for public hearing before the Greenwich planning and zoning commis-

sion. The hearing was an extended one and continued during seven separate sessions held by the commission between February 28 and March 14, 1966. The five members of the commission participated in all sessions. About four months after the conclusion of the hearing, the commission unanimously denied both applications on July 18, 1966.

On July 12, 1966, the plaintiff, as trustee, executed a quitclaim deed reconveying the eighty-three-acre tract to the Foundation. This deed was neither delivered nor recorded.

The plaintiff alone appealed from the decision of the commission to the Court of Common Pleas, which concluded that the plaintiff was aggrieved and that the failure of three members of the commission to disqualify themselves invalidated the decision of the commission, so that the appeal should be sustained. Judgment was rendered accordingly. The Greenwich planning and zoning commission has appealed from that judgment, and individual intervening parties have also appealed. The appeals challenge the court's conclusions that the plaintiff was aggrieved and that the commission's decision was invalidated by the disqualification of three members who participated in it.

A person does not become aggrieved until the zoning authority has acted, and the question of aggrievement is a jurisdictional one for the court. *I. R. Stich Associates, Inc.* v. *Town Council*, 155 Conn. 1, 3, 229 A.2d 545. To be entitled to an appeal, the plaintiff was required to allege and prove that he was aggrieved by the decision of the commission. *I. R. Stich Associates, Inc.* v. *Town Council*, supra. This required a showing that he "had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest

such as is the concern of all members of the community and that . . . [he was] specially and injuriously affected in . . . [his] property or other legal rights." *Krejpcio* v. *Zoning Board of Appeals,* 152 Conn. 657, 660, 211 A.2d 687. There must be "a specific, personal and legal interest in the subject matter of the decision." *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 662, 145 A.2d 832.

The plaintiff's appeal was couched in two counts attacking the denial of his individual application of June 8, 1965, and the application of July 8, 1965, in which he was joined by other applicants. The court reached a general conclusion that the plaintiff was aggrieved by the action of the commission in denying both appeals. With respect to the application of June 8, 1965, the court concluded that, under the zoning regulations, the plaintiff had the right, as a property owner, to apply to the commission for a change of zone and that, as a property owner entitled to make such an application, he was aggrieved by the denial of the application. It is clear from what we have just said that the mere denial of an application does not establish aggrievement. The court's conclusion to the contrary was erroneous, and consequently the plaintiff's appeal, so far as it relates to the June 8, 1965, application, should have been dismissed on the ground that the plaintiff had failed to establish aggrievement. *Krejpcio* v. *Zoning Board of Appeals,* supra.

The court also concluded, however, that the plaintiff was aggrieved by the denial of the July 8, 1965, application in that, as the record owner, as trustee, of the eighty-three-acre tract and a contract purchaser of a lot within the tract whose right to purchase was conditioned on a change of zone, he had a specific, personal and legal interest in the subject

matter of the commission's decision and was specially and injuriously affected in his property or other legal rights by the decision appealed from. The plaintiff's appeal, as amended, alleged that he was the record owner of the property, as trustee, and the contract purchaser of a parcel within the property. From the evidence produced, the court found, as subordinate facts, that the plaintiff offered no evidence of financial loss, individually or as trustee, and no evidence of special injury by the denial of the July 8, 1965, application. At the same time, the court found the plaintiff's relation to, and interest in, the eighty-three-acre tract to be as we have already related. No correction of the court's finding of subordinate facts is required.

The plaintiff's status as a person aggrieved by the decision appealed from was a question of fact for the court to determine. *Josephson* v. *Planning Board,* 151 Conn. 489, 492, 199 A.2d 690; *Luery* v. *Zoning Board,* 150 Conn. 136, 140, 187 A.2d 247. The conclusion reached by the court cannot be disturbed on appeal unless the subordinate facts found do not support it. *Hickey* v. *New London,* 153 Conn. 35, 38, 213 A.2d 308. The facts as found by the court were adequate to support the conclusion that, as to the July application, the plaintiff had established aggrievement. *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 431, 226 A.2d 380; see *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 140, 139 A.2d 601. Consequently, the conclusion cannot be disturbed. *Parcesepe* v. *Zoning Board of Appeals,* 154 Conn. 46, 47, 221 A.2d 270.

Since the plaintiff had standing to appeal from the commission's denial of the July application we must consider the defendant's claim that the court erred in concluding that the decision of the com-

mission was invalid because three of its members were disqualified from participating in it. The court found that none of the three had any personal interest, pecuniary or otherwise, in the subject matter of the application, that none of them acted from any improper motive, and that there was no evidence of any conflict of interest on the part of any of them. Nevertheless the court concluded that, by failing to disqualify themselves, each took a position tending to weaken public confidence in the fair and impartial exercise of zoning powers and consequently the plaintiff's appeal should be sustained.

When the hearing began on February 28, the attorney for the plaintiff "invited" the members of the commission "to reflect upon" § 8-11 of the General Statutes and "invited" any member who felt that he should disqualify himself to do so.[1] The

---

[1] "Sec. 8-11. DISQUALIFICATION OF MEMBERS OF ZONING AUTHORITIES. No member of any zoning commission or board and no member of any zoning board of appeals or of any municipal agency exercising the powers of any zoning commission or board of appeals, whether existing under the general statutes or under any special act, shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission or board or said board of appeals or any agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the board or commission hearing such matter. No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. In the event of such disqualification, such fact shall be entered on the records of the commission or board and the remaining members of the commission or board, unless otherwise provided by special act, shall choose an elector to act as a member of such commission or board in the hearing and determination of the particular matter or matters in which the disqualification arose; except that, in the event of such disqualification of a member or alternate member of a zoning board of appeals, replacement shall first be made from alternate members pursuant to the provisions of section 8-5a."

caution was repeated at the second session on March 7. There is no denial that, during subsequent sessions, the three members of the commission made full disclosure of the basis for any possible disqualification. It appeared that two of them, before becoming members of the commission, had signed a petition opposing the plaintiff's application and that one of these two, who had asked to have his name stricken from the petition before becoming a member of the commission, was also an officer and director of an organization which opposed the plaintiff's application. A third member of the commission had belonged to an organization which opposed the plaintiff's application, but he had not participated in the organization's decision to oppose the application and had resigned from the organization in January, 1966. The first two, after reciting their situation as aforesaid, stated that, any prior expressions of views notwithstanding, they would decide the plaintiff's application on the evidence produced at the hearing having in mind the best interests of the town.

The plaintiff was represented by counsel throughout the hearing. Although he and his counsel were fully aware of the facts which form the basis for the claim made in the trial court and reasserted here that the three members of the commission were disqualified, no direct challenge to the qualification of any member was made at the hearing before the commission. On the contrary, the plaintiff's counsel stated to the commission that he did not intend to challenge the qualifications of any of its members but wished merely to "raise" the question. Finally, when asked by the chairman of the commission whether he wished to continue with the hearing or to request a new hearing and after a recess to con-

sider the question, he did not request a new hearing. The long colloquy at that point is enlightening. By question after question, the chairman sought to know, by direct answer, whether the plaintiff's counsel challenged the qualifications of any member of the commission. He succeeded in obtaining only the assertion that the plaintiff had "raised" the question, that he was not waiving any rights and that the decision was "the Commission's responsibility and ultimately the Court's responsibility." We cannot read the exchanges without sensing the thinly veiled threat which counsel's responses were calculated to convey to the commission in the event of a decision unfavorable to the plaintiff.

Following the decision of this court in *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774, which defined the standards demanded of a member of a zoning body, the General Assembly, in 1951, adopted what is now § 8-11 of the General Statutes. Since then we have met with various aspects of the subject many times. *RK Development Corporation* v. *Norwalk,* 156 Conn. 369, 374, 242 A.2d 781, and cases cited. The plaintiff does not suggest that any member of the commission had any financial interest in the subject matter of the application before it. The other basis of disqualification which finds specific mention in § 8-11, on which the plaintiff chose to base his observations at the hearing, is a personal interest. A personal interest, we have said, is "a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess." *Anderson* v. *Zoning Commission,* 157 Conn. 285, 290, 253 A.2d 16.

Having found that there was no evidence of any conflict of interest and no evidence of any personal

interest, pecuniary or otherwise, the court then rested its decision on the ground that two of the members placed themselves in positions where their personal interest might conflict with their public duty and that all three placed themselves in a position tending to weaken public confidence in the fair and impartial exercise of the zoning powers. As recently as *Katz* v. *Brandon,* 156 Conn. 521, 535, 245 A.2d 579, we have disapproved such conduct by a public officer. We have repeatedly emphasized that "[n]eutrality and impartiality of members are essential to the fair and proper operation of . . . [zoning] authorities." *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 480, 199 A.2d 162; *Josephson* v. *Planning Board,* supra, 493; see also *Stocker* v. *Waterbury,* 154 Conn. 446, 453, 226 A.2d 514. At the same time we have recognized, as in *Anderson* v. *Zoning Commission,* supra, 291, that there may be cases, although the present case is not one of them, in which "[l]ocal governments would . . . be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official." And we reiterated that practical consideration in *Armstrong* v. *Zoning Board of Appeals,* 158 Conn. 158, 171, 257 A.2d 799.

Without departing in any measure from the principles established in the numerous decisions referred to, we have, in the present case, a situation in which counsel, in full possession of the facts, declined, after raising the issue, either to challenge any member of the board directly or, when that opportunity was volunteered to him by the commission itself, to request a new hearing. We have said that modern procedural concepts "regard with disfavor the failure, whether because of a mistake of

law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, the assignment of such errors as grounds of appeal." *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95. Instead of taking forthright action, counsel left to the members of the commission the determination of the question whether they felt themselves to be disqualified. They obviously considered themselves not disqualified and stated that they could and would decide the application on the evidence presented. They appear to have acted honestly since the court expressly found that they were actually disinterested and that none of them acted from improper motives. Counsel chose to allow them to decide the application which was before them and to take the chance that the decision would be favorable to the plaintiff. That choice having been made deliberately, the decision of the commission should not be disturbed in the light of the express finding by the court that no personal or pecuniary interest, no conflict of interest and no improper motive were involved. *Furber* v. *Trowbridge,* 117 Conn. 478, 482, 169 A. 43; see also *Katz* v. *Brandon,* 156 Conn. 521, 531, 245 A.2d 579.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.