GOODFELLOW CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE PLANNING BOARD OF THE BOROUGH OF CLEMENTON AND THE COUNCIL OF THE BOROUGH OF CLEMENTON, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 24, 1977—Decided February 15, 1977.

502

Before Judges FRITZ, ARD and PRESSLER.

*Messrs. Melnik, Morgan, Weinberg and Weiner,* attorneys for appellant (*Mr. Richard C. Klein,* on the brief).

*Messrs. Bleakly, Stockwell and Zink,* attorneys for respondents (*Mr. Charles A. Little* on the brief).

PER CURIAM. This controversy arises out of a public sale of municipal lands pursuant to *N. J. S. A.* 40A:12–13(a) by defendant Borough of Clementon to plaintiff Goodfellow Construction Co., Inc. (Goodfellow).

■ The parties perceived the primary question here raised to be whether or not a condition of the sale set forth in the advertisement soliciting bids and restricting the potential use of the property survives a municipal deed of conveyance which fails to refer to that condition at all. The trial judge held that it does and Goodfellow, the purchaser who brought this action in order to be relieved of the onus of the condition, appealed. It has apparently, however, escaped the attention of the parties both here and below that the condition which is the subject of this dispute is one which the aforecited public sale statute expressly prohibits. Since, however, the public interest is here involved and since the illegality of the condition is self-evident from this record, we have concluded that we should not ignore the real issue here even though the parties may have.

■ The cause of our concern becomes evident from a recitation of the facts, which are essentially undisputed. The Borough of Clementon apparently is the owner of a number of parcels of land scattered throughout the municipality. We gather from the record that the borough does not have a specifically formulated program by which it initiates the disposition of land which it does not require for public use. Rather, it makes its determination on an *ad hoc* basis initiated by the application of a prospective purchaser who expresses an interest in acquiring a particular parcel. That application is referred to the planning board (board) for its review. While we do not have the benefit here of any resolution or less formal communication from the board to the council, we understand from the trial testimony of the board's secretary that the procedure then followed by the

board is to make a decision as to whether or not the parcel is required for public use, whether it should be sold, and if so, whether the sale should be made pursuant to any special conditions. The board had long since, apparently, insisted, in respect of the sale of vacant residential land, on the uniform condition that construction of a house be commenced within a year from the date of the sale and completed within two years from the date of the sale. The board then reports its recommendation to the council, which, if it concurs, offers the land for public sale in accordance with *N. J. S. A.* 40A: 12-13(a) upon adoption of an appropriate resolution. There is, of course, never any assurance that the applicant who initiated the process will in fact be the successful bidder at the public sale but only that he will have an opportunity to bid. We find that general procedure unexceptional and not in violation of the public sale statute.

The controversy here had its genesis, apparently, as the result of an urban renewal taking of the home of one Edward Starkus, who, in 1972, was a member of the council and the councilmanic member of the board. He desired to relocate within the borough and accordingly inspected the available residential offerings in town. Early in 1972 he apparently settled upon a vacant municipally-owned tract across the street from the home of the mayor. It is that tract which is the subject of this controversy. Located in a residential zone and subject to a minimum 75-foot frontage requirement, it consisted of two adjacent lots, one having a 50-foot frontage and the other having a frontage of 100 feet. Many of the residential lots in the immediate vicinity have greater than the minimum required frontage, including the mayor's, and it was apparently the intention of Starkus to use the two lots, with their combined 150-foot frontage, as a single consolidated parcel on which he intended to build his house. He thereupon followed the customary procedure, applying to the planning board in February 1972, but declining, because of the evident conflict of interest, to participate in its considerations. The board sent a favorable recommendation

to the council, which adopted a resolution, generally in accord with the statute, offering the two lots for public sale and containing, among other provisions, the condition that "The aforedescribed lands and premises shall be sold and developed as one tract." Notice of the public sale was duly advertised and the sale, which took place as scheduled early in March 1972, was attended by at least several bidders. The record does not disclose whether Starkus was one of the bidders, but we do know, of course, that it was plaintiff Goodfellow which submitted the highest bid, which was in due course accepted. Goodfellow is a local developer, building houses both on speculation and on custom order.

For reasons not explained in the record, the municipal deed was not delivered to plaintiff until October 1972. Plaintiff's president denies, however, having any advance information as to what recitations by way of condition, covenant or other wise would be therein contained. Nevertheless, in September 1972, prior to delivery of the deed, he took two independent steps preparatory to his development of the tract. He obtained a building permit for the construction of a single one-family residence to be located ten feet from the side line of the wider lot, thus providing the minimum required side yard, and he made application to the planning board for a minor subdivision, permitting him to add 25 feet from the side of the wider lot to the narrower lot, thus creating two fully conforming 75-front-foot lots. The Planning board considered the application twice, denying it the first time and referring it, the second time, to the council, which denied it. The denial by each body was based on the conclusion that grant of the subdivision application would constitute a violation of the "one tract development" condition of sale. In the meantime, the bargain and sale deed to the two lots was finally delivered to the plaintiff but, by what was represented below to be a scrivener's error by the municipal attorney, it contained no reference to that condition. Plaintiff, relying on the doctrine that all conditions of a contract of sale of real estate are merged into the

deed and claiming, therefore, that the silence of the deed resulted in the abrogation of the condition, commenced this action in lieu of prerogative writs seeking reversal of the municipality's actions in denying the minor subdivision. Prior to the commencement of the action plaintiff had completed construction of the house on the larger lot and sold the house and the larger lot only to a residential user, taking back an unrecorded deed for the 25 feet thereof required to make the smaller lot conforming. It is not suggested anywhere in this record to the contrary and we are, therefore, accordingly satisfied that the consideration paid by plaintiff's grantees was a full and fair consideration for the house on a 75-front foot lot. We are, therefore, satisfied that the interest of these grantees can be in no way adversely affected by our determinations here.

As we have heretofore noted, the trial judge dealt with the issues here presented in the context in which the controversy was presented, namely, as if it were one primarily implicating the equitable doctrine of merger by deed. His conclusion that there was no merger and that plaintiff continued bound by the "one tract development" condition was, in our view, well reasoned. In essence, the trial judge was correct in his conclusion that while acceptance of a deed is deemed *prima facie* to constitute full execution of a contract to convey, nevertheless survival of covenants is a question of the intent of the parties and the circumstances here could not permit of a finding that there was any intention that the condition in question not survive. See, *e.g., Deerhurst Estates v. Meadow Homes, Inc.,* 64 *N. J Super.* 134, 142–143 (App. Div. 1960), certif. den. 34 *N. J.* 66 (1961). Were the condition valid we would have no hesitancy in affirming the judgment below dismissing the complaint.

The problem, however, is that *N. J. S. A.* 40A:12–13 (a) specifically provides that restrictions or conditions included in the advertisement of public sale

\* \* \* shall be related to a lawful public purpose and encourage and promote fair and competitive bidding of the county or municipality and *shall not, in the case of a municipality, be inconsistent with or impose a special or higher standard than any zoning ordinance or* building, plumbing, electrical, or similar code or ordinance then in effect in the municipality. [Emphasis supplied]

We do not quarrel with the municipality's decision to sell the two lots as a unit to the same purchaser. Indeed, that course of action is virtually mandated if the municipality is to avoid the subsequent problems inherent in the undersized lot situation. The problem lies in the attempt by the municipality by way of a condition of sale, to prohibit a subsequent perfectly lawful, perfectly routine minor subdivision which would create two conforming lots. We are satisfied that such a prohibition runs directly afoul of the statutory proscription against conditions of sale which impose a higher standard than does the zoning ordinance.[1]

We cannot, however, conclude that the illegality of the condition should entitle plaintiff to the relief it seeks because we are satisfied that relieving plaintiff of the onus of the condition would result in a deprecation of the purpose and policy of the public bidding requirements of the statute. It is perfectly obvious, from an economic point of view, that two adjacent conforming building lots have greater value to a developer than does a single oversized lot. We are further satisfied, therefore, that as a matter of economic reality there is at least a high degree of probability that the "one tract development" condition diminished the value of the offered property, at least in respect of that class of actual and potential bidders. As we have noted, the condition requiring single tract development would have been enforceable but for the 1971 revision of the Local Lands and Buildings Law and was,

---

[1] *N. J. S. A.* 40A:12–1 *et seq.*, is part of the ongoing revision of *Title* 40 and was adopted in 1971. The section in question derives from *N. J. S. A.* 40:60–26, which did not contain this prohibition. See, *e. g.*, *Nativo v. Hackensack*, 76 *N. J. Super.* 512 (App. Div. 1962).

prior to that revision, perfectly enforceable. There was, moreover, no reason for plaintiff or for any other bidder to expect that the deed of conveyance would omit the condition as a covenant running with the land and there was, furthermore, no indication that this or any other bidder realized at any time that the condition was unenforceable by reason of the statutory proscription. We are, therefore, satisfied that relieving plaintiff of the onus of the condition would have the effect of producing a windfall for it at the public expense since it may be inferred that if two building lots rather than one had been the subject of the sale to begin with, the price produced therefor would probably have been higher. We are also satisfied that relieving plaintiff of the condition now and under these circumstances would undermine the basis of competitive bidding on fair and uniform specifications since we must presume that the other bidders and potential bidders did or would have based a *bona fide* bid on the lesser value of the land as offered, namely, one albeit oversized building lot. Thus, relief from the condition now would defeat the necessary clear and common standard for bidding which the statute requires. See, *e.g., Jersey City Merchants Council v. Jersey City,* 39 *N. J.* 42, 53–55 (1962); *Nativo v. Hackensack,* 76 *N. J. Super.* 512, 522 (App. Div. 1962); *Mendez v. Newark,* 132 *N. J. Super.* 261, 265–267 (Law Div. 1975). A condition of sale can be waived or modified only if such action is reasonably necessary to advance the public interest in view of changed circumstances, and there are none such here. See *Oldfield v. Stoeco Homes, Inc.,* 26 *N. J.* 246, 261–262 (1958); *Hendlin v. Fairmount Constr. Co.,* 8 *N. J. Super.* 310, 339 (Ch. Div. 1950).

██ ██ Were the house not yet constructed on these premises and were the property thereby not already functionally subdivided, we would have no hesitancy in voiding the sale, requiring the municipality to refund the purchase price to plaintiff and permitting it to make a new determination as to whether it wished to re-offer the property for public sale in accordance with the provisions of the statute. While we

can no longer accomplish that result, we are loathe to adopt either of the two obvious alternatives available to us. Should we relieve plaintiff of the condition of the sale, we will have conferred upon him a windfall and countenanced a scheme which undermines the purpose of the public bidding policies in this State. On the other hand, if we simply reaffirm the imposition of that condition, we will be sanctioning a violation of express statutory mandate. We have, therefore, concluded that the proper resolution of this controversy requires us to steer a course between Scylla and Charybdis by returning the parties as nearly as possible to their pre-sale positions. In our view, this can only be accomplished by requiring the minor subdivision to be approved and by then requiring plaintiff to re-convey the vacant conforming lot thereby created to the municipality. We are aware that the price it paid for the entire tract may, but not necessarily, be greater than the fair market value of a single 75-foot building lot. It will have, however, sufficient protection if it is permitted to prove by way of plenary hearing in the trial court, the difference, if any, between what it actually paid for the two lots and the value to a developer of a minimum conforming lot. The municipality shall then re-offer the lot so reconveyed to it for public sale at a fair minimum price and it shall, out of the realized proceeds of the sale, reimburse plaintiff in the amount of any such differential as found by the trial court. Plaintiff's right to reimbursement, however, shall not exceed the net proceeds of any public sale. We are satisfied that such a procedure is in this posture of the controversy the only reasonable way to fairly accommodate both the public and private interests here implicated.

We accordingly reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.