231 N.J. Super. 586 (1989)
555 A.2d 1195
LILA LANDAU, WALTER LANDAU, AND EDWARD LOFBERG, PLAINTIFFS,
v.
THE TOWNSHIP OF TEANECK, A BODY POLITIC AND CORPORATE, DEFENDANT,
v.
NORTHERN TEANECK SYNAGOGUE ASSOC., INTERVENORS.
Superior Court of New Jersey, Law Division Bergen County.
Decided January 27, 1989.
*588 Joel M. Ellis (Ellis & Gartlan) for plaintiffs.
Martin R. Cramer (Ruden & Cramer) for defendant.
Richard T. Garofalo (Wells, Garofalo & Jaworski) for intervenors.
MARGUERITE SIMON, J.S.C.
This action in lieu of prerogative writ seeks to invalidate a proposed sale of municipally owned lands by the Township of Teaneck to the Northern Teaneck Synagogue Association. Several significant issues are raised including whether conditional uses are permitted uses in conjunction with municipal bidding, whether membership in a different house of worship of the same denomination amounts to a conflict of interest and whether municipal contracts bind a successor Mayor and Council.
*589 The lands in question are a portion of the Roemer tract which constitutes approximately 19 acres in the West Englewood section of Teaneck. It is the last sizeable undeveloped area in the municipality and its usage has become a highly charged local issue. This acreage is currently zoned RS-1 which permits single family residences and lists various conditional uses.
On January 29, 1987, the Northern Teaneck Synagogue Association (NTSA) wrote to the Teaneck Mayor and Council offering to purchase 5 acres in the southeasterly portion of the Roemer tract for use as a house of worship. This use as a house of worship was approved in concept by the Planning Board. After numerous meetings of both that Board and the Mayor and Council, the Township of Teaneck determined to make available for a house of worship a 4 acre tract in the northeasterly portion of the Roemer woods which was more distant from adjacent residences.
In August 1987, Michael Kates, then Township Attorney, received correspondence from Eric Neisser of the American Civil Liberties Union stating that, in the opinion of his organization, designation of a religious use for the land would be in violation of the "establishment" clauses of the United States and New Jersey Constitutions. In response to that letter, the municipality changed their proposed bidding specifications to include, in addition to a house of worship, other conditional uses which were permitted in the zone and which were in conformity with a 4 acre site. The Mayor and Council adopted a resolution in January 1988 to offer the four acre tract in the northeasterly portion for sale at a public auction which, after appropriate advertising, was held on March 14, 1988. Four entities, all religious, bid at that auction with NTSA submitting the highest bid of $1,100,000.00. A contract was executed that same day by NTSA and the Township Manager on behalf of Teaneck. By resolution of March 15, 1988, the Mayor and Council confirmed the sale to NTSA.
*590 The complaint in the present matter was instituted on March 3, 1988 before the date of the public sale. The Township of Teaneck was named defendant and NTSA was permitted to intervene. Plaintiffs Lila Landau, Walter Landau, Lamar Jones and Edward Lofberg are all Teaneck residents living in close proximity to the Roemer Woods. These individuals had indicated their opposition to any development of the entire Roemer tract and the record indicates that Lila Landau and Lamar Jones had at public meetings expressed their opposition to the sale of this land.
Teaneck held a municipal election on May 10, 1988 and those council members running for re-election who favored the sale to NTSA were defeated. Indeed, Lamar Jones was deleted as a plaintiff in this case because he became a member of defendant governing body when he earned a council seat in that election. The present governing body takes a diametrically opposed position from its predecessor, alleges it is not bound by its predecessor, and seeks to repudiate the proposed sale to NTSA as void and ultra vires. A pretrial motion by the Township of Teaneck to be removed as a party defendant and joined as plaintiff was denied by this court largely because it would have delayed the trial. However, the court at that time determined that parties would be permitted to allege their current positions at trial with a formal Pretrial Order determining the issues and the allegations of each party.
Were the actions of the predecessor governing body legally sufficient to obligate the current Mayor and Council to sell the land to NTSA? This Court answers affirmatively and will consider several of the issues.
Plaintiffs and the municipality argue that the proposed sale must be negated since the property was defectively bid. They maintain that single family residences are the only permitted use in the RS-1 Zone and that the bidding specifications violated the above statute and amounted to an illegal attempt to rezone. The procedures followed by the municipality were *591 made after a determination based upon the advice of the then current Township Attorney and this Court agrees that his advice was sufficient.
The relevant statute provides for sale of municipally owned real property which is not needed for public use as follows:
By open public sale at auction to the highest bidder after advertisement ... with or without the reservation of the right to reject all bids where the highest bid is not accepted ... The invitation to bid may also impose restrictions on the use to be made of such real property, capital improvement or personal property, and any conditions of sale as to buildings or structures ... to be constructed thereon ... Such restrictions or conditions shall be related to a lawful public purpose and promote fair and competitive bidding of the county or municipality and shall not, in the case of a municipality, be inconsistent with or impose a special or higher standard than any zoning ordinance or building, plumbing, electrical, or similar code or ordinance then in effect in the municipality. N.J.S.A. 40A:12-13(a).
The use specifications as included in Teaneck's Notice to Bidders stated:
Development of the property shall be limited to the following conditional use categories in the R-S Single Family Detached District: "Quasi-public buildings and recreation areas" as defined and delimited in Section 33-25(c) of the Teaneck Township Code, and "Houses of religious worship" as defined and delimited in Section 33-25(d) of the Teaneck Township Code.
Additional conditions dealt with adequately buffering the development from adjacent residential areas and with ingress and egress.
The position that the bidding was defective as advanced by plaintiffs and the municipality is based upon two assumptions. First, it assumes that N.J.S.A. 40A:12-13(a) requires that bidding specifications include all uses permitted in a zone. The second assumption is that conditional uses are not permitted uses. The first such assumption is clearly erroneous as the statute itself provides that the municipality "may also impose restrictions on the use to be made of such real property." An interpretation which would prevent the municipality from imposing any restrictions on use clearly violates the plain meaning of the statute. See Perez v. Pantasote, Inc., 95 N.J. 105 (1984).
This Court also considers the second assumption to be incorrect. The "conditional use" designation of the Municipal Land *592 Use Law of 1975, N.J.S.A. 40:55D-1 et seq. replaced the "special exception" nomenclature of its predecessor. N.J.S.A. 40:55-39(b). Historically, municipalities used this classification to encompass uses of a publicly beneficial nature. Tullo v. Millburn Tp., 54 N.J. Super. 483, 490-491 (App.Div. 1959). Houses of religious worship are usually considered to be inherently beneficial. The Municipal Land Use Law provides that conditional use applications now fall within the jurisdiction of the Planning Board. N.J.S.A. 40:55D-67. That Board does not need to consider whether the proposed conditional use meets the negative criteria, i.e. no adverse impact.
The nature of a conditional use is examined in depth by Judge Pressler in Exxon Co., U.S.A. v. Livingston Tp. in Essex Cty., 199 N.J. Super. 470 (App.Div. 1985) and also in Urban Farms, Inc. v. Franklin Lakes, 179 N.J. Super. 203 (App.Div. 1981), where she employs the following description:
Rather, a special exception or conditional use is a permitted use, subject to specific special controls and conditions. It is moreover, a use which the municipality recognizes as not incompatible with the uses in the zone otherwise permitted but at the same time one which is not necessarily suitable everywhere in the district. Supra at 211.
Conditional uses may require special standards or additional acreage making them unsuitable for indiscriminate location within the zone where they are permitted. Exxon, supra, 199 N.J. Super. at 477. Here, the nature of a house of worship or quasi-public use obviously requires different standards and likely greater square footage, parking and access than a single family residence. The statutory requirement for planning board approval of conditional uses is met by the provisions in both the bid specifications and the contract for such approval before construction.
Exxon Co., U.S.A. v. Livingston states that ... "the essence of the conditional use concept is that every site within the district which is able to meet the objective standards for suitability is entitled to qualify for that use." 199 N.J. Super. at 477-8. Therefore, bidding specifications which list such uses *593 are not inconsistent with or impose a higher standard than the zoning ordinance and meet the requirements of N.J.S.A. 40A:12-13(a). The conditional use provisions in the present case are consistent with the above requirements and are, by nature, unlike a bidding requirement of minimum frontage in excess of that required by zoning ordinance which was declared illegal in Goodfellow Const. v. Plan. Bd. Bor. Clementon, 147 N.J. Super. 500 (App.Div. 1977). The prebid procedure followed in Teaneck where NTSA as a prospective purchaser contacted the municipality indicating its interest in acquiring municipal lands was declared unexceptional and valid in Goodfellow, supra at 505.
Plaintiffs and the muncipality allege that the entire transaction with NTSA is tainted and void because of a conflict of interest of Councilman David Lew. David Lew is an attorney at law who resides in the West Englewood section of Teaneck. During the period in question he served on both the Council and the Planning Board and, along with Mayor Bernard Brooks, was one of the prime supporters of the Northern Teaneck Synagogue Association application. David Lew is an Orthodox Jew and a member and past president of Congregation Bnai Yeshurun which is the largest Orthodox Jewish congregation in the West Englewood section of Teaneck. Testimony indicated that Congregation Bnai Yeshurun is currently very overcrowded and, as a result, conducts staggered sabbath services. During much of the period in question, Congregation Bnai Yeshurun had its own application for expansion in its present location before the Teaneck Board of Adjustment. Some Bnai Yeshurun members have expressed support and others have expressed opposition to the application of NTSA.
Northern Teaneck Synagogue Association is a separate entity from Congregation Bnai Yeshurun. It does not have its own house of worship and currently conducts religious services at the Whittier School in Teaneck. Its founders were all congregants at Bnai Yeshurun. It is clear from testimony before this Court that, during proceedings in the municipality, counsel for *594 objectors requested that David Lew disqualify himself. It is not clear whether that request was made because he was an Orthodox Jew or because he was a member of Bnai Yeshurun. Councilman Lew testified that he and the Township Attorney both believed he had no conflict of interest and he therefore refused to disqualify himself. Councilman Lew lives nearer to Congregation Bnai Yeshurun than to the proposed NTSA site in the Roemer tract and he testified that he has no intention of joining NTSA. Orthodox Jews do not drive on the sabbath and accordingly must walk to services.
Councilman Louis Schwartz, a political adversary of David Lew, testified that he overheard a portion of a conversation in which Councilman Lew referred to this application and stated that he needed this one. According to Councilman Schwartz, the overheard conversation took place out of sight in an adjacent room. Accordingly, the circumstances surrounding its being overheard make it so unreliable as to be entirely without probative value. In addition, the mental state of David Lew is not controlling in determining if he has a conflict of interest. See Griggs v. Princeton Borough, 33 N.J. 207 (1960), McVoy v. Bd. of Adjustment of Montclair Tp., 213 N.J. Super. 109, 116 (App.Div. 1986).
This Court must consider the facts and determine whether Councilman Lew had a conflict of interest. "No member of the planning board shall be permitted to act on any matter in which he has either directly or indirectly, any personal or financial interest." N.J.S.A. 40:55D-23b. The same test applies to council members. Van Itallie v. Franklin Lakes, 28 N.J. 258 (1958). The principles to be considered in determining a conflict of interest enumerated in Van Itallie, supra, were reiterated more recently by the Appellate Division:
The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case. Aldom v. Borough of Roseland, supra, 42 N.J. Super. [495] at page 503 [(1956)]. No definite test can be devised. The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty. *595 Local governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official. If this were so, it would discourage capable men and women from holding public office. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. But in doing so they must also be mindful that to abrogate a municipal action at the suggestion that some remote and nebulous interest is present, would be to unjustifiably deprive a municipality in many important instances of the service of its duly elected or appointed officials. The determinations of municipal officials should not be approached with a general feeling of suspicion, for as Justice Holmes has said, `Universal distrust creates universal incompetency.' Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 151, 58 L.Ed. 319, 324 (1913); see also Ward v. Scott (II), 16 N.J. 16 (1954). (28 N.J. at 268-269); Marlboro Manor, Inc. v. Montclair Tp., 187 N.J. Super. 359 at 361-362 (App.Div. 1982).
It is clear that the interest of a synagogue or church passes to all its members. Marlboro Manor, supra, Zell v. Borough of Roseland, 42 N.J. Super. 75 (App.Div. 1956). Therefore, David Lew would be in conflict were he a member of NTSA. Plaintiffs and the municipality seek to extend the concepts of Marlboro Manor and Zell to disqualify members of another religious organization which could benefit from the granting of the application of one religious organization. They also argue that Councilman Lew's own synagogue has taken a formal position in the matter of its overcrowding by requesting variances to permit expansion of its synagogue. This Court applies the test enumerated in Van Itallie and holds that the connection of Councilman Lew to NTSA is too remote to consider a conflict. Courts must be ever mindful of the potential for conflict of interest and of the appearance of conflict of interest. They must also be mindful of the potential for abuse of a remote connection by political opponents to defeat otherwise valid governmental actions. The danger is particularly true on a municipal level where contacts with local groups are more intense.
Here, NTSA is a separate ongoing organization distinct and apart from Congregation Bnai Yeshurun. Councilman Lew's membership in Bnai Yeshurun was disclosed. Not all Bnai Yeshurun congregants favored the application of NTSA. The *596 new synagogue would relieve overcrowding at Bnai Yeshurun but would also reduce memberships and perhaps revenues. Bnai Yeshurun is taking a separate and different approach to its overcrowding problems by seeking to expand its facilities. Councilman Lew was an avid supporter of the NTSA application as was Mayor Bernard Brooks, a Roman Catholic. Under the totality of the circumstances here, this Court finds that Councilman Lew did not need to disqualify himself.
The agreement to sell the land in question to NTSA is binding upon the current Mayor and Council. The municipal actions of public bidding of municipally owned land and the subsequent contract to sell that land are of a proprietary or corporate nature. McQuillin Mun Corp § 53.30a (3rd Ed). The same commentator deals with successors and states:
Statutes and charters sometimes authorize municipal boards to make contracts which will extend beyond their own official term, and the power of the legislature in this respect is well settled. Respecting the binding effect of contracts extending beyond the terms of officers acting for the municipality, there exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist. Consequently, although a contrary rule prevails as to contracts relating to business affairs, it is generally held that, independent of statute or charter provisions, the hands of successors cannot be tied by contracts relating to governmental matters. McQuillin Mun Corp § 29.101 (3rd Ed).
Indeed, in certain cases, even nonproprietary governmental actions may bind successors. Board of Education of Voc. School v. Finne, 88 N.J. Super. 91 (Law Div. 1965). The selling of public lands by the Township of Teaneck is clearly proprietary and binding if regular and reasonable. The minor irregularity of the contract being executed by the Township Manager instead of the Mayor was corrected when expressly ratified by the Mayor and Council. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134 (1957); Houman v. Mayor & Coun. Bor. Pompton Lakes, 155 N.J. Super. 129 (Law Div. 1977). Since the Court holds the municipality is contractually bound to sell the *597 lands in question, it need not consider NTSA's estoppel arguments. As an aside, estoppel may be inappropriate as NTSA was aware of the litigation in opposition to the sale of the Roemer acreage even before the bidding.
The sole remaining issue concerns whether, although this land was zoned residential and acquired through various foreclosure proceedings, it was held for recreation and conservation purposes and could not be disposed of without Department of Environmental Protection approval under N.J.S.A. 13:8A-47. There is some question whether such approval would be necessary. However, this matter can be best handled by invoking the Court's equitable powers to provide that, in addition to the planning board approval provided in the contract, NTSA shall, if the DEP deems necessary, obtain DEP approval within the same time period.
In conclusion, the current Mayor and Council of Teaneck are bound by the actions of its predecessor and must convey a portion of the Roemer tract to the Northern Teaneck Synagogue Association in accordance with the contract between the parties.