272 N.J. Super. 162 (1994)
639 A.2d 402
JEAL SUGARMAN AND WEST ENGLEWOOD RESIDENTS ASSOCIATION, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF TEANECK AND TOWNSHIP OF TEANECK BOARD OF ADJUSTMENT, DEFENDANTS-RESPONDENTS, AND CONGREGATION B'NAI YESHURUN, DEFENDANT-INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1994.
Decided April 8, 1994.
*165 Before PETRELLA, BAIME and VILLANUEVA, JJ.
Jeal Sugarman, argued the cause pro se. (Mr. Sugarman and Richard Salzman, on the brief).
Richard Salzman argued the cause for appellant, West Englewood Residents Association (Mr. Salzman and Jeal Sugarman, on the brief).
Harold Ritvo argued the cause for respondents (Ritvo and Ritvo, attorneys; Harold Ritvo, on the brief).
Bruce S. Rosen and Bruce D. Shoulson argued the cause for intervenor-respondent (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Messrs. Rosen and Shoulson, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs Jeal Sugarman and the West Englewood Residents Association (Association) appeal from a determination by the Law Division in a suit in lieu of prerogative writ, which sustained a grant of variances by the Township of Teaneck Board of Adjustment (Board) to Congregation B'Nai Yeshurun (Congregation). The plaintiffs had appealed the Board's determination to the Teaneck Township Council (Township). However, since plaintiffs failed to file briefs or a record before the hearing date, the Township was unable to act and deemed the Board's decision to have been affirmed.
*166 On their appeal from the judgment of the Law Division dismissing their complaint, plaintiffs contend that (1) the entire proceeding must be voided because a Board member who was a former affiliate member of the Congregation, should have been disqualified for her conflict of interest; (2) the Board's approval of the application was arbitrary, capricious and unreasonable; (3) the Congregation did not satisfy the "special reasons" requirement of N.J.S.A. 40:55D-70d; (4) the proposed variances were detrimental to the public good and impaired the intent of the zone plan and zoning ordinance; and (5) the Congregation's nursery school constituted a separate conditional use and required a separate variance.
This matter is before this court for the second time. The history of the 1988 application is set forth in our earlier decision in which the Association intervened and participated as an objector. On July 31, 1990, we reversed the judgment of the Law Division setting aside the Board's denial of variances and reinstated the Board's determination substantially for the reasons stated in its comprehensive resolution dated June 30, 1988, as well as for reasons stated in our decision. Congregation B'Nai Yeshurun v. Tp. of Teaneck, A-4655-88.
The Congregation sought to expand its synagogue, a preexisting conditional use, to accommodate its current membership for worship as well as for ritual and social gatherings without severe overcrowding. The structure which was rejected by the Board in 1988 was a proposed four-story brick building with a flat roof, topped by an eight-foot high air-conditioning tower. That proposal necessitated the demolition of single-family homes owned by the Congregation and the destruction of existing landscaping.
The most recent application was submitted in 1991 and made various modifications in the size of the building. It proposed construction of a two-story building, with a maximum of thirty-five feet in height, including the air-conditioning (as contrasted with a forty-foot height and eight additional feet for an air-conditioning, heating and ventilation unit in the prior application), with a sloping *167 roof-line and various overhangs and terraces. The intent was to create an illusion, using the natural terrain, that the building was in the scale of surrounding single-family development. Under the 1991 proposal the existing synagogue and one of the single-family homes is retained and incorporated into the design. In addition, the all-purpose room which was originally to accommodate 425 people in rows and 275 people at tables, was reduced so that it would accommodate 194 people at tables. Although the ordinance required forty parking spaces, the proposal contained thirty parking spaces, a slight increase over the prior application.

I
We deal first with the claim that a Board member should have disqualified herself. The most troublesome aspect of this appeal is the issue of whether the participation of Board member Anne Senter was improper either, as a conflict of interest or because of the appearance of impropriety, and whether this should void the Board's action.
There are two significant matters. First, Senter's affiliate membership did not exist at the time of the hearings. Second, although plaintiffs' attorney asked Senter about her affiliation with the Congregation at the beginning of the initial hearing, there was no specific request, objection or motion made for Senter to recuse herself or make any decision on the issue. Senter replied to plaintiffs' attorney that she was not then a full or associate member of applicant, nor was she a member of any Teaneck orthodox congregation. She said she participated in a private prayer group that met in a private home. Apparently her husband was not a member of the Congregation. Senter did acknowledge that she had previously been an affiliate member, but ceased this affiliation to avoid any appearance of impropriety. The affiliate membership was described as one which entitled her to receive mail about social events, holidays, educational programs and charity drives. Despite her associate membership, Senter was still required to pay nonmember prices if she attended any of *168 the Congregation's events. She was also an affiliate member of other congregations for the same purposes. Following Senter's response, appellants' attorney proceeded to discuss another matter.
Plaintiffs raised the objection that Senter's prior affiliate membership was a personal interest requiring disqualification, for the first time before the trial judge. Plaintiffs relied on N.J.S.A. 40:55D-69, which states in pertinent part: "... No member of the board of adjustment shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest...."[1] Before the Law Division judge, the plaintiffs referred to the record from a prior proceeding in which Senter had disclosed that she, her children and husband sometimes attended services at the Congregation's synagogue because it was the only local congregation that offered weekday morning worship. She also indicated that the last time she had been a full member was in 1970.
The Law Division judge rejected the concept that attendance by one spouse at the Congregation's services necessarily bound the other. He also concluded that Senter's own interest was not sufficient to create a conflict in that (1) she had given up affiliate membership in favor of her position on the board; and (2) her reasons for maintaining the affiliate membership had been motivated by social concerns and her interest in the local Orthodox Jewish community. The judge found that the objectors had failed to make an accurate record to support their claim of conflict and characterized their position as "an attempt at a second bite at a well-chewed apple." He nonetheless termed the question a close-call.
*169 If an actual conflict of interest exists a Board member must disqualify himself or herself. McVoy v. Board of Adjustment, Montclair, 213 N.J. Super. 109, 116, 516 A.2d 634 (App.Div. 1986). If a personal interest requiring disqualification exists, neither the failure to object nor the existence of sufficient votes absent that member's vote would change the requirement that the entire proceeding would be voidable. Aldom v. Roseland, 42 N.J. Super. 495, 507-508, 127 A.2d 190 (App.Div. 1956). See also Szoke v. Board of Adjustment, Monmouth Beach, 260 N.J. Super. 341, 345, 616 A.2d 942 (App.Div. 1992).
Nonetheless, whether the particular interest involved here requires disqualification is a fact question which depends upon the particular circumstances involved. Aldom, supra, 42 N.J. Super. at 503, 127 A.2d 190. Current membership in a synagogue or church would be a disqualifying interest. See McVoy, supra, 213 N.J. Super. at 111-112, 516 A.2d 634; Zell v. Roseland, 42 N.J. Super. 75, 81, 125 A.2d 890 (App.Div. 1956); Landau v. Teaneck, 231 N.J. Super. 586, 595, 555 A.2d 1195 (Law Div. 1989).
In Landau, the fact that a councilman was a member of a nearby congregation that might incidentally benefit from favorable action for an applicant was considered too remote a conflict to require disqualification, even though he had been outspoken in supporting the application. Landau, supra, 231 N.J. Super. at 595-596, 555 A.2d 1195.
Here, Senter had maintained her affiliate membership until she perceived that it might lead to an appearance of impropriety. She was not a member of the Congregation at the time of the hearings, and the record only indicates that instead of belonging to any congregation she worships in a private home. Although it might be said that the prior affiliate membership has the potential to create an appearance of impropriety, it appears remote as in Landau, since she had given up that membership.
*170 Fletcher v. Planning and Zoning Commission of Greenwich, 158 Conn. 497, 264 A.2d 566, 570 (1969), was a case where a member of a planning and zoning commission "had belonged to an organization which opposed the plaintiff's application, but he had not participated in the organization's decision to oppose the application and had resigned from the organization in January, 1966" just before the hearings began in February 1966. In discussing this particular member the court noted that although plaintiff's attorney had raised a question of qualification before the commission, he did not directly challenge any commissioner's qualifications. Id., 264 A.2d at 571. A colloquy took place between plaintiff's attorney and the commission chairman, following the chairman's inquiry about whether he was requesting a new hearing based on a conflict. The court sensed there was a "thinly veiled threat" that plaintiff would raise a conflict issue in an appeal if the decision was unfavorable. Ibid.
Although the Fletcher court suggested the advisability of the commissioner disqualifying himself because of the appearance of a conflict, the court noted the absence of any evidence indicating that the commissioner had an actual personal or pecuniary interest or improper motive. Ibid. It thus refused to set aside the commission's decision, indicating disfavor of a party's deliberately failing to object to an error until it was too late to correct it, and then using that error as a basis for an appeal. Id. at 572. The court held that absent a board member's actual personal or pecuniary interest, or improper motive, it would decline to overturn the commission's decision in light of the applicant's deliberate choice to proceed with the application, gambling that the decision would be in the applicant's favor.
In Appeal of Sweigart, 117 Pa.Cmwlth. 84, 544 A.2d 74, 79 (1988), homeowners appealed, alleging, among other things, that the borough solicitor's prior affiliation as a board member of the applicant required him to disqualify himself. Although the court termed the solicitor's prior affiliation "disturbing," it found no conflict of interest where the record showed the solicitor had *171 attended no meetings, taken no action, and resigned without ever actually having been involved in the organization. Ibid. The court refused to reverse the Board where the facts indicated only an appearance of a conflict and there was no suggestion of control or influence on others.
We conclude in this case that although recent prior affiliate membership in the Congregation suggests the advisability of Senter removing herself from the application due to a possible appearance of impropriety, in the absence of personal or financial interest or an actual conflict of interest it does not require vacation of the Board's decision under the circumstances here present. There was no indication of any actual pecuniary or personal interest, improper motive or actual bias. Hence, we agree with the Law Division judge that where a Board member has such a tenuous appearance of impropriety as in this case, a party cannot make a strategic decision to not challenge the alleged impropriety at the hearing in order to save it as a trump card on appeal, in the event of an adverse decision. Hence, we decline to overturn the Board's decision on that basis.

II
We turn now to the challenge to the Board's grant of the variances to the Congregation. Under Teaneck's ordinances a place of worship, such as Congregation's synagogue, is a conditional use in the residential zone. Thus, its application for a variance comes under N.J.S.A. 40:55D-70d(3). See Loscalzo v. Pini, 228 N.J. Super. 291, 299-300, 549 A.2d 859 (App.Div. 1988), certif. denied, 118 N.J. 216, 570 A.2d 972 (1989). A "d" variance is required even if the unsatisfied conditions are physical features that ordinarily would require a bulk variance. White Castle Systems v. Planning Board, Clifton, 244 N.J. Super. 688, 693-694, 583 A.2d 406 (App.Div. 1990), certif. denied, 126 N.J. 320, 598 A.2d 880 (1991). Hence, appellants' reliance on standards applicable to bulk variances is misplaced.
*172 Our standard of review in considering an appeal from the grant of a variance by a board of adjustment is circumscribed. We essentially consider whether the grant of the variances is arbitrary, capricious or unreasonable. See Sica v. Board of Adjustment of Tp. of Wall, 127 N.J. 152, 166-167, 603 A.2d 30 (1992); Evesham Tp. Board of Adjustment v. Evesham Tp., 86 N.J. 295, 302, 430 A.2d 922 (1981); Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 296-297, 212 A.2d 153 (1965). Hence, as a general rule, courts defer to the discretion of the municipal agency. Kramer, supra, 45 N.J. at 296-297, 212 A.2d 153; Demarest v. Mayor & Council of Borough of Hillsdale, 158 N.J. Super. 507, 511, 386 A.2d 875 (App.Div.), certif. denied, 78 N.J. 331, 395 A.2d 200 (1978).
Since the Congregation satisfied the "special reasons" requirement, and the Board determined that the Congregation had responded to its earlier concerns, and the variances would not be detrimental to the public good or substantially impair the zoning plan and ordinances, those determinations are entitled to deference.
The Board appropriately balanced the benefits and burdens associated with the beneficial use and its decision that the Congregation satisfied the negative and positive criteria is supported by the record. Sica, supra, 127 N.J. at 164, 603 A.2d 30. We are satisfied that the quantum of proof respecting the negative criteria was adequate here. North Bergen Action Group v. Planning Board, North Bergen, 122 N.J. 567, 578, 585 A.2d 939 (1991), and Hawrylo v. Board of Adjustment, Harding Tp., 249 N.J. Super. 568, 583, 592 A.2d 1236 (App.Div. 1991). In addition, the Board imposed conditions on the variances to minimize any negative effects.
Finally, we turn to plaintiffs' argument that the Board erred in failing to consider applicant's existing nursery school as a separate conditional use that required a separate variance. We reject this argument as without merit. Moreover, it appears that *173 Teaneck ordinance § 33-25(b),[2] indicates that it does not apply to nursery schools offered by religious groups to members' children within the place of worship. Hence, the only relevant parking requirements are those applicable to places of worship.
Affirmed.
NOTES
[1] N.J.S.A. 40:55D-69 also provides that the governing body may appoint alternate members to the board of adjustment. Although the vote on this grant of a variance was six-to-one, we are unaware of whether there were alternate members who might have been available. We presume there were.
[2] A copy of this ordinance has not been submitted to us but was quoted in the briefs without any challenge. There is no suggestion that the quotation is inaccurate.