951 A.2d 1060 (2008)
401 N.J. Super. 482
William E. MEYER, Esq., Plaintiff-Appellant,
v.
MW RED BANK, LLC and Red Bank Zoning Board of Adjustment, Defendants-Respondents.
No. A-1984-06T3
Superior Court of New Jersey, Appellate Division.
Argued February 27, 2008.
Decided July 21, 2008.
*1061 Bernard M. Reilly, Monmouth, argued the cause for appellant (Dowd and Reilly, attorneys; Mr. Reilly, on the brief).
James G. Aaron, Newark, argued the cause for respondent MW Red Bank, LLC (Ansell, Zaro, Grimm & Aaron, attorneys; Mr. Aaron and Hussam Chater, Ocean, on the brief).
Kevin E. Kennedy, argued the cause for respondent Red Bank Zoning Board of Adjustment.
Before Judges AXELRAD, SAPP-PETERSON and MESSANO.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
In this appeal, we revisit our decision in Haggerty v. Red Bank Borough Zoning Bd. of Adjust., 385 N.J.Super. 501, 897 A.2d 1094 (App.Div.2006), to determine whether Lauren Nicosia, a member of defendant, Red Bank Zoning Board of Adjustment (Zoning Board), should have recused herself from participating in the variance application of defendant, MW Red Bank, LLC (MW). Judge Alexander Lehrer ruled that Nicosia did not have a disqualifying interest in the matter and that our decision in Haggerty, supra, was distinguishable, despite the fact that plaintiff advanced the same disqualifying interest on the part of Nicosia as was raised in Haggerty, supra. We agree and affirm.
Plaintiff, William E. Meyer, is an attorney and resident of Red Bank. Plaintiff was also the attorney of record who successfully challenged Nicosia's participation in the variance application that was the subject of the Haggerty decision.
MW is a limited liability corporation. Its ownership consists of two entities: Woodmont at Red Bank, LLC and Blaisdell Lumber, LLC (Blaisdell). Woodmont at Red Bank is owned by Eric Witmondt and Michael Witmondt, while Blaisdell is jointly owned by Christopher Cole (Cole), Merrit Sher and Ronald Sher (Shers). Cole and the Shers also jointly own Terranomics and The Grove at Shrewsbury, LLC (Grove). The structure of MW is best illustrated as follows:
*1062 
MW purchased a 1.8-acre parcel located on Bridge Avenue and West Front Street. On April 4, 2005, MW, as a contract purchaser, filed a development application with the Zoning Board. MW sought permission to
[demolish] the existing storage buildings, the existing antique shops, the former lumber/hardware depot, and the associated parking facility; and
[construct] a Mixed Use Development, consisting of (a) not to exceed 110 mid-rise residential apartment units; (b) 13,235 sq. ft. first floor retail space; (c) a 14,486 sq. ft. Brew Pub; and (d) a[n] 86,777 sq. ft. vertical parking garage, containing 264 stalls.
Because its application required variances, MW chose to bifurcate the variance application from its site plan application.
As part of its review of the variance application, the Zoning Board held five hearings over a five-month period lasting from July 7, 2005, through December 1, 2005. Michael DuPont, the Chairman of the Zoning Board and a partner at the law firm of McKenna, DuPont, Higgins & Byrnes (the McKenna Law Firm), recused himself from the hearings, stating, "I will be stepping down from the [Zoning] Board, due to the fact that I've represented Mr. [Chris] Cole in the purchase of his house."[1] After DuPont recused himself, *1063 Nicosia became the acting chair who presided over MW's variance application. During this same time period, Nicosia's father, a retired Superior Court judge, held an "of counsel" position in the McKenna Law Firm.
Plaintiff raised the issue of a corresponding Nicosia conflict with the Zoning Board's attorney, Kevin Kennedy (Kennedy), and MW's attorney, Rick Brodsky (Brodsky), when the proceedings first commenced. Yet, the Board apparently did not address the issue until the December 5, 2005 hearing, at which time Kennedy publicly addressed plaintiff's concerns and recited portions of the Law Division's decision in Haggerty, in which the Law Division judge had found no conflict on the part of Nicosia in that matter. Nicosia assured the Zoning Board attorney that she had no disqualifying interest related to the MW variance application and she continued to preside over the hearing.
During the public portion of the hearing, plaintiff voiced his displeasure that Kennedy chose to address the issue publicly without giving him any advance notice. He stated further:
I did raise that issue with you [Kennedy] and Mr. Brodsky before, off the record, before the first meeting. And I had asked Mr. Brodsky if there was in fact a conflict. He had indicated that there was a conflict.
I raised the point with you. If there was going to be such an inquiry, I would have expected it to have been conducted at that time and not at the end of this particular application. I think that there were also cases that are reported decisions that could have been read, that conflict with the decision you did read.
On February 16, 2006, the Zoning Board adopted a twenty-eight page resolution granting MW's bifurcated variance application.
On April 7, 2006, plaintiff instituted a two-count complaint in lieu of prerogative writs challenging Nicosia's participation in MW's variance application (Count One) and also challenging the Zoning Board's approval of MW's variance application (Count Two). The Zoning Board filed an answer, and MW, in lieu of an answer, moved to dismiss the complaint on the basis that plaintiff failed to comply with the transcript requirements of Rule 4:69-4. Plaintiff responded by cross-moving for summary judgment based upon our decision in Haggerty, decided one month after plaintiff filed his complaint.
Following oral arguments on the motion and cross-motion, the court dismissed the second count of the complaint "as a result of plaintiff's failure to order the requisite transcripts pursuant to Rule 4:69-4" and denied plaintiff's cross-motion.[2] The court entered a case management *1064 order, relative to the first count, setting a trial date, discovery end date, and briefing schedule. Thus, the sole issue before the court was whether Nicosia had a conflict of interest that disqualified her from participating in the Zoning Board's review of MW's variance application.
At trial, the court, sua sponte, raised the issue of whether plaintiff was estopped from challenging the Zoning Board's decision because he failed to raise the issue of Nicosia's potential conflict of interest during the hearing. At the end of the hearing, the court reserved decision and provided each party with the opportunity to brief the issue of equitable estoppel in a supplemental brief.
After the parties submitted briefs on equitable estoppel, the court entered a final order dismissing plaintiff's complaint with prejudice. The court determined that any conflict of interest that existed on the part of DuPont was not automatically imputed to Nicosia. The court found that Ms. Nicosia's father's "of counsel" status with the McKenna Law Firm could not reasonably be expected to impair Nicosia's "objectivity or independence of judgment."
In his written opinion attached to the dismissal order, Judge Lehrer distinguished our decision in Haggerty.
In Haggerty, [supra,] the McKenna Firm prepared and filed a development application in the Borough of Little Silver on behalf of Palatial Homes at Red Bank, L.L.C. ("Palatial"). That application was filed in May of 2002 and sought approval for a major subdivision. Thereafter, the McKenna Firm represented Palatial before the Little Silver Planning Board, which representation continued until at least January of 2004.
During the application process, while the McKenna Firm was actively representing Palatial in Little Silver, Palatial became the contract purchaser of certain property located in the Borough of Red Bank. That property had a development application pending before the Red Bank Zoning Board of Adjustment for variance and site plan approval.
. . . .
Here, unlike Haggerty, [supra,] the McKenna Firm never represented MW Red Bank, nor was there current representation of a member or entity of the applicant. The record clearly demonstrates that any and all legal representation by the McKenna Firm was terminated in 2003, almost two years prior to the filing of the application at issue. The record is also undisputed that since 2003, all individual members and entities comprising MW Red Bank have been represented by completely different counsel.
The court finds there are no circumstances presented here that could reasonably be interpreted to show any capacity to tempt Ms. Nicosia to depart from her sworn public duty. Van Itallie [v. Franklin Lakes, 28 N.J. 258, 268, 146 A.2d 111 (N.J.1958)]. The relationship between MW Red Bank and the McKenna Firm consisted of the Firm's prior representation, on a case-by-case basis, of a principal of MW Red Bank, individually or in connection with other corporate entities. That relationship ended years before the application herein challenged. The facts further reveal the McKenna Firm never represented the applicant MW Red Bank. Clearly, there is no conflict. The "of counsel" relationship of Ms. Nicosia's father in this factual context does not create contradictory desires tugging Ms. Nicosia in opposite directions. Wyzykowski [v. Rizas, 132 N.J. 509, 523, 626 A.2d 406 (1993)]. Ms. Nicosia should not be disqualified from hearing the MW Red Bank application.
*1065 In addition, Judge Lehrer noted that although plaintiff, who at the time of the MW application was the attorney of record for the objectors in Haggerty and had already filed an appeal of the Law Division judge's decision, "never raised the issue of Ms. Nicosia's conflict or the Haggerty appeal. Mr. Meyer never applied to the Board or the court for a stay of the MW Red Bank application pending the outcome of his appeal in Haggerty." The court found that plaintiff should have requested a stay of the application before the Zoning Board pending the outcome of the Haggerty appeal. The court concluded that plaintiff's inaction "mandates that he now be equitably estopped from raising the alleged conflict of interest as a basis for challenging the Zoning Bard's approval." The trial court affirmed the Zoning Board's approval of MW's variance application. The ensuing appeal followed.
On appeal, plaintiff raises the following points for our consideration:
POINT I
THE DETERMINATION THAT THE BOARD CHAIRPERSON DID NOT HAVE A DISQUALIFYING INTEREST, AND THE COURT'S DISREGARD OF HAGGERTY [, SUPRA], INVOLVING THE SAME EXACT CONFLICT, WERE INCORRECT AND THE USE/DENSITY/FAR VARIANCE APPROVAL SHOULD BE INVALIDATED.
POINT II
THERE WAS NO BASIS FOR THE COURT TO FIND AN ESTOPPEL BECAUSE PLAINTIFF CITIZEN/OBJECTOR DID NOT FILE AN INTERLOCUTORY LAWSUIT AFTER HIS CONFLICT OBJECTION WAS DISREGARDED IN THE BOARD HEARING.
Generally, we will not "disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J.Super. 154, 155, 188 A.2d 43 (App.Div. 1963)). However, the "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Plaintiff contends that in light of DuPont's recusal, Nicosia should also have been disqualified because of her father's "of counsel" position with the McKenna Law Firm. He asserts that since this case involves the same zoning board, the same board members, and the same reason for DuPont's recusal that DuPont gave in the Haggerty case, an attorney-client relationship, Nicosia likewise had a disqualifying interest in the MW variance application.
Both by statute and decisional law, New Jersey has long recognized the public's right to expect that its representatives, whether appointed or elected, must discharge their duties without any actual or perceived personal or pecuniary interests that might cloud their judgment. Wyzykowski, supra, 132 N.J. at 522-23, 626 A.2d 406.
In Wyzykowski, our Supreme Court held that under common law rule, "`[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties. . . .'" Supra, 132 N.J. at 523, 626 A.2d 406 (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J.Super. 566, 568, 598 *1066 A.2d 1232 (App.Div.1991)). The court described four types of interests that require disqualification:
(1) "Direct pecuniary interests," when an official votes on a matter benefiting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance, as in the case of a councilman's mother being in the nursing home subject to the zoning issue; and (4) "Indirect Personal Interest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.
[Id. at 525-26, 626 A.2d 406 (quoting Michael A. Pane, Conflict of Interest: Sometimes a Confusing Maze, Part II, New Jersey Municipalities, March 1980, at 8, 9).]
The common law definition of conflict of interest was refined with the passage of the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25. In enacting comprehensive ethics legislation, the Legislature declared:
a. Public office and employment are a public trust;
b. The vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives;
c. Whenever the public perceives a conflict between the private interests and the public duties of a government officer or employee, that confidence is imperiled[.]
[N.J.S.A. 40A:9-22.2(a)-(c).]
Consistent with this declaration, N.J.S.A. 40A:9-22.5(a) provides that "[n]o local government officer or employee or member of his immediate family shall have an interest in a business organization or engage in any business, transaction, or professional activity, which is in substantial conflict with the proper discharge of his duties in the public interest[.]"
"A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." Wyzykowski, supra, 132 N.J. at 524, 626 A.2d 406 (citing Griggs v. Borough of Princeton, 33 N.J. 207, 220-21, 162 A.2d 862 (1960)). Moreover, a conflicting interest does not require that the interest actually influence the action of the representative, but only that the interest creates a conflict. Griggs, supra, 33 N.J. at 219, 162 A.2d 862.
The inquiry into whether a specific interest is enough to disqualify a board member is fact-sensitive and the outcome will depend on the circumstances surrounding each case. Van Itallie, supra, 28 N.J. at 268, 146 A.2d 111. In that regard, we recognize that not every interest has the capacity to entice a public official to depart from his sworn duty. Barrett v. Union Twp. Comm., 230 N.J.Super. 195, 201, 553 A.2d 62 (App.Div. 1989). For example, "[a] remote and speculative interest will not be held to disqualify the official." Ibid. (citing Van Itallie, supra, 28 N.J. at 269, 146 A.2d 111; Marlboro Manor, Inc. v. Bd. of Comm'rs of Montclair Twp., 187 N.J.Super. 359, 361, 454 A.2d 905 (App.Div.1982); LaRue v. Twp. of E. Brunswick, 68 N.J.Super. 435, 447, 172 A.2d 691 (App.Div.1961)).
In the context of a familial relationship that may trigger a disqualifying interest, the pivotal issue is not the degree of *1067 relationship to the board member, but, rather, "the type of association the relative had with the interested organization and the amount of interest the relative had in the official's actions." Kremer v. Plainfield, 101 N.J.Super. 346, 351, 244 A.2d 335 (Law Div.1968) (setting aside approval of variance application where board member's nephew was a partner in the law firm which represented the applicant before the board); see also Van Itallie, supra, 28 N.J. at 258, 146 A.2d 111 (finding no disqualification because board member's brother only held a low level position in a large corporation that could potentially benefit from the zoning decision and there was no evidence that the brother's employment status would have benefited from the board's decision); Petrick v. Planning Bd. of Jersey City, 287 N.J.Super. 325, 331-32, 671 A.2d 140 (App.Div.1996) (holding board member's wife's occasional employment as an occupational therapist with hospital, whose application for a parking garage was pending before the board, could not reasonably be viewed as improperly influencing board member's judgment).
Turning to our decision in Haggerty, upon which plaintiff relies, the defendant, Building and Land Technology (BLT), filed a development application for a major subdivision with the Red Bank Zoning Board. Supra, 385 N.J.Super. at 503, 897 A.2d 1094. Prior to the hearing on the application, BLT assigned all of its rights to purchase the subject property to Palatial, another developer. Id. at 505, 897 A.2d 1094. At the outset of the hearing, the Zoning Board Chairman, DuPont, as he did in the present matter, recused himself because his law firm, the McKenna Law Firm, had previously represented one or both of the applicants some years ago. Ibid. More significantly, at the same time that BLT's application was before the zoning board, at least one of the named partners of the McKenna Law Firm was representing Palatial in another matter before the Little Silver Planning Board. Id. at 515, 897 A.2d 1094.
As a result of DuPont's recusal, Nicosia, as she did in the MW variance application, acted as chairperson. Nicosia's father was "of counsel" to the McKenna Law Firm at that time as well. Id. at 506-07, 897 A.2d 1094. The Zoning Board approved the application by a vote of six-to one. Id. at 506, 897 A.2d 1094. Subsequently, the plaintiffs, landowners in the Borough of Red Bank, filed a complaint in lieu of prerogative writs against the zoning board and BLT challenging the zoning board's approval of the application partially on the basis that Nicosia should have recused herself. Id. at 508, 897 A.2d 1094.
The Law Division judge affirmed the zoning board's decision, finding plaintiff's "allegations concerning Nicosia `too remote and speculative to warrant disqualification.'" Id. at 512, 897 A.2d 1094. On appeal, we initially noted that "throughout the proceedings before the [zoning board], Palatial, who had a clear and distinct interest in the Red Bank proceedings, was being represented by DuPont's firm[,]" albeit in an unrelated matter in another municipality. Id. at 515-16, 897 A.2d 1094. We next determined that "a person in an `of counsel' relationship with a law firm has a sufficient stake in the financial viability of the firm as to impute to such individual any disqualification of the firm arising from client representation by partners or associates in the firm." Id. at 516, 897 A.2d 1094. We found that since Nicosia's father was a member of her immediate family, "the appearance of impropriety inherent in [the] relationship [was] `something more than a fanciful possibility.'" Id. at 516-17, 897 A.2d 1094 (quoting Petrick, supra, 287 N.J.Super. at 331, 671 A.2d 140). We therefore found that Nicosia *1068 was disqualified from participating in the BLT variance application. Id. at 517, 897 A.2d 1094. We reversed the trial court's order affirming the approval of the application and remanded the matter for new hearings. Id. at 503, 897 A.2d 1094. We reached this decision, despite recognizing that the variance application would still have passed without Nicosia's affirmative vote. Id. at 517, 897 A.2d 1094.
Here, it is undisputed that the McKenna Law Firm has never represented MW. It has, however, represented Cole, Terranomics, The Grove at Shrewsbury, and other companies connected to Cole. Presumably, Nicosia's father was "of counsel" to the firm during some or perhaps all periods of this representation.[3] However, by the time MW filed its variance application, the firm had not provided legal representation on behalf of Cole or any of the other companies with which he was connected for nearly two years. In our view, this fact distinguishes Haggerty from the present matter. Although the McKenna Law Firm did not represent BLT when it sought its variance in Haggerty, it was representing Palatial, BLT's contract purchaser, in Palatial's development application before Little Silver's zoning board.
The McKenna Law Firm has never represented MW and was not engaged in any active representation of Cole, Terranomics, or The Grove at Shrewsbury while MW's application was before the Zoning Board. Id. at 515-16, 897 A.2d 1094. The firm's and therefore Nicosia's father's only association with MW was indirectly through the firm's prior representation of Cole, Terranomics and The Grove at Shrewsbury nearly two years prior to the submission of MW's application. That DuPont chose to recuse himself under the particular circumstances he proffered, namely, his representation of Cole in a real estate transaction two years earlier, did not, without more, require a corresponding disqualification on the part of Nicosia.
Moreover, while given an opportunity to do so, beyond propounding interrogatories, plaintiff chose not to conduct any further discovery. Had plaintiff elected to pursue further discovery, plaintiff could have explored whether there were additional facts giving rise to a basis for Nicosia's recusal. Thus, notwithstanding DuPont's personal decision to recuse himself from the proceedings, we do not find that the firm's prior relationship with Cole and the other entities connected to Cole could reasonably be viewed as improperly influencing Nicosia's judgment relating to MW's variance application. See Petrick, supra, 287 N.J.Super. at 331-32, 671 A.2d 140. We are therefore satisfied Judge Lehrer properly found no disqualifying interest.
In light of our decision that Nicosia had no disqualifying interest that warranted her disqualification in the MW variance application, we need not address whether plaintiff was equitably estopped from challenging Nicosia's participation. We do, however, add the following comments.
"If a personal interest requiring disqualification exists, neither the failure to object nor the existence of sufficient votes absent that member's vote would change the requirement that the entire proceeding would be voidable." Sugarman v. Twp. of Teaneck, 272 N.J.Super. 162, 169, 639 A.2d 402 (App.Div.1994) (citing Aldom v. Roseland, 42 N.J.Super. 495, 507-08, 127 A.2d 190 (App.Div.1956)), certif. denied, 137 N.J. 310, 645 A.2d 139(1994). Further, the New Jersey Municipal *1069 Land Use Law provides that "[n]o member of the board of adjustment shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest." N.J.S.A. 40:55D-69.
Affirmed.
NOTES
[1] During the course of this litigation, in response to supplemental interrogatories propounded by plaintiff, Chairman DuPont detailed the extent of the McKenna Law Firm's connection with Cole:

My Law Firm represented Terranomics, a Company with which Christopher Cole was and is associated, in a matter, Terranomics from Realty Brokerage, File Number 26182. The said File was closed and destroyed, as the matter ended years ago.
Terranomics was also represented by my Law Firm in the matter of Terranomics Brook 35-Starbucks, File Number 26982. The said File was closed and destroyed, as [the] representation ended years ago.
My Law Firm also represented Terranomics in a matter dealing with the Banana Republic, File Number 25055, which File was closed and destroyed, as the matter ended years ago.
My Law Firm represented Christopher Cole and Tracy Cole in a Real Estate Transaction from Gilmore, File Number 31055, which File was closed in August of 2003.
My Law Firm represented Terranomics in the File of Terranomics  the Grove  Expansion, File Number 26869, which File was closed in August of 2001.
My Law Firm represented Christopher Cole in a matter entitled Cole from Frederick and Diane Bunneister, File Number 27924, which File was closed in November of 1999.
My Law Firm represented Christopher Cole in a Real Estate Transaction entitled Cole from Bernard and Kathryn Delaney, File Number 28109, which File was closed in June of 1999.
My Law Firm represented Christopher Cole and Tracy Cole in a Residential Refinance of the 240 Mechanics Street, Red Bank, New Jersey property (File Number 32960), which File was closed in July of 2003.
[2] Plaintiff has not appealed the dismissal of Count Two.
[3] The record does not disclose when Nicosia's father became "of counsel" to the McKenna Law Firm.