**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3476-21

DEREK ARMSTEAD,
GRETCHEN HICKEY,
RALPH STRANO, and
ARMANDO MEDINA,
individually,

      Petitioners-Appellants,

v.

LOCAL FINANCE BOARD,

      Respondent-Respondent.

_____

        Submitted December 5, 2023 – Decided January 18, 2024

        Before Judges Gooden Brown and Puglisi.

        On appeal from the New Jersey Department of Community Affairs, Local Finance Board.

        Aloia Law Firm, LLC, attorneys for appellants (Brian Joseph Aloia and Victoria A. Lucido, on the briefs).

        Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Steven Michael Gleeson, Deputy Attorney General, on the brief).

PER CURIAM

Petitioners Derek Armstead, Gretchen Hickey, Ralph Strano and Armando Medina appeal from the May 31, 2021 final agency decision of the Local Finance Board (the Board) adopting with modifications the initial decision of Administrative Law Judge (ALJ) Thomas R. Betancourt, which found petitioners violated the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.5(d), and fined them each $100. We affirm as to the decisions regarding Hickey and Medina, and reverse and remand the decisions as to Armstead and Strano.

I.

Petitioners were council members in the City of Linden in Union County. Linden is governed by a mayor and a council president, both of whom are elected at-large, and ten members of a city council elected by ward.

During their tenure as council members, petitioners were full-time employees of Union County. As Union County employees, petitioners reported to their respective county department heads, who reported to the county manager, who reported to the Union County Board of Commissioners.

The Board of Commissioners, which consists of nine elected members, is "an area-wide agency of state government empowered to administer state

functions within the County and as an instrumentality of the people to provide area-wide services for their use and benefit[.]"  Union County, N.J., Code § 1-13.  Among its powers, the Board "[m]ay pass a resolution of disapproval of a suspension or dismissal" of any Union County employee.  Id. at § 1-13(E).  From 2012 to 2016, Mohamed Jalloh was an elected Union County Commissioner.

Armstead was employed by Union County as a data processing programmer from 1998 to 2016.  On November 20, 2012, in his capacity as a Linden council member, Armstead voted in favor of Resolution 2012-389 appointing Jalloh as Acting Public Defender in a Linden municipal court matter.  On December 18, 2012, Armstead voted in favor of Resolution 2012-422 qualifying Jalloh & Jalloh LLC for Acting Public Defender Services, Litigation Defense Counsel Services, Special Counsel Services, and Sid Committee.  On August 19, 2014, Armstead voted in favor of Resolutions 2014-310, -311 and -312, appointing Jalloh as Acting Public Defender in three Linden municipal court matters.

Hickey was employed by Union County as a clerk from 2011 to 2016.  The letterhead on Hickey's pre-employment letter dated April 15, 2011, listed the names of all Union County Commissioners, including Jalloh.  On February 17, 2015, in her capacity as a Linden council member, Hickey voted in favor of

Resolution 2015-112 appointing Jalloh as Assistant Municipal Attorney and Assistant Municipal Prosecutor. On January 5, 2016, she voted in favor of Resolution 2016-14 appointing Jalloh as Assistant Municipal Prosecutor.

Strano was employed by Union County as a traffic maintenance worker since 1999. In his capacity as a Linden council member, he also voted in favor of Resolution 2016-14.

Medina was hired by Union County as a community service worker on January 9, 2016, having received a pre-employment letter from Union County the previous month. The letterhead on the pre-employment letter listed the names of all Union County Commissioners, including Jalloh. In his capacity as a Linden council member, Medina also voted in favor of Resolution 2016-14.

On March 19, 2021, the Board issued notices of violation advising petitioners they violated N.J.S.A. 40A:9-22.5(d) by voting "on matters that awarded contracts of employment" to Jalloh,[1] who was their "ultimate supervisor as . . . employee[s] of the County," and imposing a fine of $100 on each petitioner. Petitioners requested a hearing and the Board transferred the case to the Office of Administrative Law as a contested matter pursuant to N.J.S.A.

---

[1] There were no allegations of any wrongdoing against Jalloh.

52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13, and both parties cross-moved for summary decision, stipulating there were no contested facts.

In his initial decision, ALJ Betancourt acknowledged Jalloh was not the direct supervisor of any petitioner. Pointing to Wyzykowski v. Rizas, 132 N.J. 509, 525 (1993), the ALJ noted there are "four circumstances under which the [LGEL] requires disqualification," one of which involves "'indirect pecuniary interests,' when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member[.]" Because Jalloh was a member of the highest management level in the petitioners' chain of command as county employees, which the ALJ found akin to sitting on the board of directors of an employer, the ALJ found recusal was required. Accordingly, the ALJ granted the Board's motion for summary decision, denied petitioners' motion for summary decision, and affirmed the notices of violation including the fine.

After considering petitioners' exceptions to the initial decision, the Board rendered its final agency decision adopting the initial decision, with modifications to particular language in the decision and corrections to certain citations.

On appeal, petitioners raise the following issues for our consideration:

POINT I

THE ALJ'S DECISION, AS ADOPTED BY [THE BOARD], IMPROPERLY GRANTED SUMMARY DECISION IN FAVOR OF RESPONDENT.

POINT II

THE ALJ'S INITIAL DECISION, AS ADOPTED BY [THE BOARD], FAILED TO CONSIDER WHETHER ANY ALLEGED CONFLICT IS TOO REMOTE OR SPECULATIVE FOR A REASONABLE MEMBER OF THE PUBLIC TO PERCEIVE THAT [PETITIONERS] HAD A PERSONAL INVOLVEMENT THAT MIGHT REASONABLY BE EXPECTED TO IMPAIR [PETITIONERS'] OBJECTIVITY OR INDEPENDENCE OF JUDGMENT.

POINT III

THE ALJ'S INITIAL DECISION, AS ADOPTED BY [THE BOARD], WAS INCORRECT IN FINDING THAT MR. JALLOH IN EFFECT SITS ON THE BOARD OF DIRECTORS OF THE EMPLOYER FOR EACH [PETITIONER], WHEN [PETITIONER] MEDINA WAS NOT EMPLOYED BY THE COUNTY ON THE DATE OF THE VOTES.

POINT IV

THE ALJ'S INITIAL DECISION, AS ADOPTED BY [THE BOARD], FAILED TO ACKNOWLEDGE WHETHER [PETITIONERS] ARMSTEAD AND STRANO WERE AWARE OF THE ALLEGED CONFLICT ON THE DATES OF THE VOTES.

6 <span>A-3476-21</span>

## II.

We begin with our standard of review. The ALJ's consideration of a motion for summary decision under N.J.A.C. 1:1-12.5 is "substantially the same" as a trial court's consideration of a motion for summary judgment under Rule 4:46-2. Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995). However, our review of an agency's summary decision differs from our de novo review of a court's grant of summary judgment. See Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). While we review de novo an agency's determination that there are no genuine issues of material fact, we "strive to 'give substantial deference to the interpretation [the] agency gives to a statute that the agency is charged with enforcing.'" In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 423 (2008) (citing Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005)). We generally will affirm an agency's final quasi-judicial decision unless it is "arbitrary, capricious, or unreasonable." Russo v. Bd. of Trustees, Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Nonetheless, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). Applying this

standard of review, we affirm the Board's determination Hickey and Medina violated the LGEL by voting on matters benefitting a county commissioner.

The LGEL's purpose is

> to provide a method of assuring that standards of ethical conduct and financial disclosure requirements for local government officers and employees shall be clear, consistent, uniform in their application, and enforceable on a Statewide basis, and to provide local officers or employees with advice and information concerning possible conflicts of interest which might arise in the conduct of their public duties.
>
> [N.J.S.A. 40A:9-22.2(e).]

Therefore, pursuant to N.J.S.A. 40A:9-22.5(d):

> No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment.

Our Supreme Court in Piscitelli v. City of Garfield Zoning Bd. of Adj., 237 N.J. 333, 351 (2019) held: "We must construe N.J.S.A 40A:9-22.5(d) to further the Legislature's expressed intent that '[w]henever the public perceives a conflict between the private interests and the public duties of a government officer,' 'the public's confidence in the integrity' of that officer is 'imperiled.'" Ibid. "A conflicting interest arises when the public official has an interest not

shared in common with the other members of the public." Meyer v. MW Red Bank, LLC, 401 N.J. Super. 482, 491 (2008). Therefore, "actual proof of dishonesty need not be shown. The key is whether there is a potential for conflict." Shapiro v. Mertz, 368 N.J. Super. 46, 53 (2004).

We find no error in the Board's determination Hickey's and Medina's voting on matters that financially benefitted a county commissioner raised an appearance of impropriety which would undermine the public's confidence in the integrity of the council. As the ALJ found, although Jalloh did not have direct supervisory authority over them as county employees, he was a member of the highest governing board of the county. It is neither remote nor speculative that the relationship, although not a direct supervisory one, "might reasonably be expected to impair . . . objectivity or independence of judgment." N.J.S.A. 40A:9-22.5(d). In other words, a member of the public would reasonably believe Hickey and Medina, because they are county employees, would not cast a vote adverse to a county commissioner's financial interests.

We recognize, as did the ALJ, that Medina's employment with the county had not yet begun at the time he cast his vote. However, this distinction does not compel a different result because "[d]ecisions construing N.J.S.A. 40A:9-22.5(d) adopt [an] expansive view, holding an appearance of impropriety, not

an actual conflict of interest, creates a disqualifying situation." Mondsini v. Local Finance Board, 458 N.J. Super. 290, 301 (App. Div. 2019). The fact that Medina was four days shy of his intended start date with the county does not alter this appearance of impropriety, because he would nevertheless have "an interest not shared in common with other members of the public." Meyer, 401 N.J. Super. at 491.

As to Armstead and Strano, however, the record contains no proof they were aware Jalloh was a commissioner at the time of their votes. Their employment pre-dated Jalloh's tenure as a commissioner and we cannot assume, as the Board urges, every county employee readily recognizes their county commissioners. While the Board argues Armstead and Strano have not provided any statement or testimony that they were unaware Jalloh was a commissioner, it is the Board's burden of proof to demonstrate the conflict of interest.

The Board also points to Mondsini to buttress its argument that a section (d) violation does not require intent or knowledge; however, this contorts the holding of that case. Mondsini was the Executive Director of the Rockaway Valley Regional Sewerage Authority. Mondsini, 458 N.J. Super. at 294. Having lost electric power during Superstorm Sandy, the Authority required certain essential employees to work to keep the generators running. Id. at 295. Because

of the gasoline shortage in the aftermath of Sandy, Mondsini permitted those essential employees to fuel their personal vehicles from the Authority's gas pump.  Ibid.  She also permitted a non-essential employee to do so but unbeknownst to her, that employee fueled two personal vehicles.  Ibid.  After investigation, the Board found that by permitting the non-essential employee to fuel his personal vehicles, Mondsini violated N.J.S.A. 40A:9-22(c), which prohibits a local employee's using "his official position to secure unwarranted privileges or advantages for himself or others."  Ibid.

In addressing whether subsection (c) requires a specific intent, we surveyed other subsections of the LGEL.  We noted to support a subsection (d) violation, "[i]t is not necessary to demonstrate actual proof of dishonesty because only the potential for conflict is necessary."  Id. at 301 (citing Wyzykowski, 132 N.J. at 524).  "Decisions construing N.J.S.A. 40A:9-22.5(d) adopt this expansive view, holding an appearance of impropriety, not an actual conflict of interest, creates a disqualifying situation."  Ibid.  But contrary to the Board's insistence here, our holding did not dispense of the knowledge component:  the official must still be aware of the potential conflict in order to commit a subsection (d) violation, because "the question" is "whether the circumstances could reasonably be interpreted to show they had the likely

11

capacity to tempt the official to depart from his sworn public duty." Wyzykowski, 132 N.J. at 523. If Armstead and Strano were unaware Jalloh was a county commissioner, there was no conflict between their private interests and their public duties, and it is not reasonable to assume that they would be tempted to depart from their sworn public duty as council members. Therefore, in the absence of evidence they knew Jalloh was a county commissioner, the charge against them cannot be sustained.

Although we ordinarily do not consider arguments not raised below, Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973), it is unclear whether this factual issue was raised before the ALJ or the Board. We do not have the parties' submissions to those tribunals, neither the ALJ nor the Board's decision addressed this point, and the Board did not object to petitioners' brief. Accordingly, as to Armstead and Strano, we reverse and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12